[No. 726.]

## SOL WEILL, APPELLANT, *v.* LUCERNE MINING COMPANY ET AL., RESPONDENT.

CHALLENGE TO JUROR—MAIN QUESTION INVOLVED IN THE CASE.—Where a juror stated that he had formed and expressed an unqualified opinion as to the course and direction of one of the mining lodes in controversy in the suit, and it was claimed that the direction of the lode was one of the main questions at issue: *Held,* that as it was impossible for the court to determine from the pleadings or facts before it whether this was one of the main questions involved, it was the duty of the appellant to have at least offered to prove, by some competent evidence, that it was one of the main questions involved in the case.

IDEM.—*Held,* that upon the facts of this case, it is not shown that the juror challenged had either formed or expressed any unqualified opinion prejudicial to appellant.

NOTICE OF MINING LOCATION, CONSTRUED.—Where a notice reads that the locators have taken and claim "for mining purposes 1200 feet of ground on the face of this hill, * * * running north 1200 feet from stake, with all its dips, angles and spurs, from thence to the centre of the hill:" *Held,* that the words "with all its dips, angles and spurs" refer to a lode, not to surface or hill claims.

DEED OF MINING GROUND—DESIGNATION OF THE NAME OF THE CLAIM.—Where a party conveys all his right, title and interest in and to certain

mining ground and quartz lode described in the deed, and it appears as a fact that his interest was derived from two different notices of location which were posted upon and claimed the same lode: *Held*, that the conveyance of his interest in the lode necessarily conveyed his interest under both locations, and it was immaterial by what particular name he designated it. (*Phillpots* v. *Blasdel*, 8 Nev. 61, affirmed.)

IDEM—How CONSTRUED.—Where the language of a deed admits of but one construction, and the location of the lode or premises intended to be conveyed is clearly ascertained by a sufficient description of the ground in the deed, by courses, distances, or monuments, it cannot be controlled by any different exposition derived from the acts of the parties in locating the premises, or from the failure of the grantor to designate the various names by which the ground conveyed was at different times known.

SECOND LOCATION OF MINING GROUND WHEN NOT AN ABANDONMENT OF THE FIRST —Where one or more of the parties first locating mining ground afterwards make a second location upon the same lode, with the names of other parties added to the notice of location, it appearing that at the time of the second location the ground was undeveloped, and it was not known that both notices were upon the same lode, and it further appearing that the second notice was posted for the express purpose of protecting the original location: *Held*, that the second location did not of itself constitute an abandonment of the first location.

IDEM.—The question of abandonment is one of intention. Whether it was the intention of the locators in the first notice to abandon their interest in the ground derived from said first notice of location, was a question of fact for the jury to determine from all the facts and circumstances of the case.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion.

*Lewis & Deal*, for Appellant.

I. The court erred in disallowing the challenge to the juror, Mathewson. The law guarantees to all persons not only impartial jurors, but also jurors who have not prejudged the case: in other words, jurors who have not formed or expressed an opinion as to the material issue in the case. The statute says a person is disqualified who has formed or expressed an opinion as to the merits of the action or the main question involved. (Sec. 1225, Comp. Laws.) This language is very clear and hardly calls for construction. What then is the merits of the action, or the main question

involved? It is not, certainly, as contended by counsel in the court below, that one party or the other is absolutely entitled to recover in the suit. If such be the law, no man is disqualified unless he has formed an opinion as to the law of the case as well as the facts. He might have a fixed opinion as to the facts in a case and still not be disqualified if he had not such an opinion as to the law to govern the facts. Such, certainly, cannot be the law. The object of the statute, as well as the common law, is to give every man a jury who will decide, not according to an opinion already formed, but according to the evidence which may be adduced at the time; and to secure this right, it esteems no man qualified to act according to the evidence who has a fixed opinion before he hears it. So there may be many main questions in a case. Any question of fact which may determine the issue is clearly a main question. A defendant may have many defenses to one action brought against him, either one of which may go to the whole merit of the case, and if found in his favor, may entitle him to a verdict. Can it be said that any one of such defenses does not constitute the main question involved? If a jury should be impaneled with a fixed opinion as to any of such defenses, surely such jury would not be capable of deciding according to the evidence. We contend, then, that a juror is disqualified who has formed an unqualified opinion as to any main fact constituting the cause of action, or the defense.

II. The court erred in refusing to give our instruction to the effect that the title to the Boston ground did not pass, unless the grantor intended to convey, and the grantee to take that ground. This instruction was pertinent to the issue, because the deed under which the defendant claims title, did not mention the Boston ground as that intended to be conveyed, but refers only to the Lucerne location; and the defendant, for the purpose of claiming that ground under the deed, put in evidence to show that the Lucerne location covered the Boston. To rebut this evidence, and to show that the locators themselves had treated the claims as separate and distinct, we introduced deeds from various locators in the Boston, which clearly showed that the two

claims were not identical; one of these deeds describing the Boston as being bounded on the north by the Lucerne, a thing that could not be if the claims were the same. Now, such being the case, it was quite proper to submit the question of intention to the jury; for, surely, if the grantor did not intend to convey ground not mentioned, nor the grantee to purchase, then, surely, such ground did not pass, for the intention of parties is the very life of all contracts, and must always govern. (2 Parsons on Cont. 6 Ed. 494—note; 9 Wallace, 50; 1 Greenleaf, sec. 287; 1 Greenleaf on Evd., sec. 286-7 288,—note.

If proof of the intention of parties was admissible at all, it was then certainly necessary to give the instruction; for, in all cases where extraneous evidence is admissible to determine what is intended to be conveyed, the jury should pass on the question. (1 Greenleaf on Evidence, sec. 288, note b; *Merrill* v. *Firth,* 3 M. & W. 402; *Moore* v. *Sarwood,* 4 Ex. 681, 5 Ex. 163-4; *Foster* v. *Mutual Life Ass. Co.* 3 E. & B. 48; *Macbeth* v. *Haldeman,* 1 Tenn. 182 ; *Smith* v. *Thompson,* 8 Com. Bench, 44, 17 Penn. 514; *Merrill* v. *Weymouth,* 28 Vt. 824.)

III. The court erred in refusing our instruction to the effect that the Surrhyne deed did not carry the Boston ground. The Boston was simply and solely a hill location. The notice itself is conclusive on this point. It claims upon the face of the hill, twelve hundred feet, and in to the center of the hill. No mention whatever is made of a ledge; and it is known that such locations were common both here and in California. The fact that no ledge location is mentioned in the notice is very strong evidence that it was not intended; but it would seem conclusive that no such intention existed, when it is seen that the location was upon the face of the hill, and in the center. Certainly, no man, intending to make a location of a ledge, would have used any such language as that employed in this notice. Again, when the same parties afterwards desired to locate a ledge, that is, the Lucerne, they expressly mentioned the ledge as the location made. So, too, the fact that the same parties who located the Boston afterwards located the Lucerne, with no

better reason for so doing than that they wanted to protect themselves and wished more ground, shows very conclusively that they themselves did not regard the Boston location in any other light than that of a hill claim.

IV. If the Boston was a ledge location, then the court erred in refusing to charge the jury that the locators of the Boston ledge abandoned the Boston title, by a new location of the same ground. The Boston locators having, in the re-location, under the name of the Lucerne company, taken in other parties, necessarily abandoned their former location. It is very clear that the two locations could not exist together. The locators of the Boston certainly could not, as against the parties taken in by them in the new location, assert their prior location of the ground under the name of the Boston. By the new location they all became tenants in common; not by any conveyance, but by a location really made by the Boston locators themselves. It seems to us manifest that the new location, as it included more ground and more locators, and was, in fact, a new company, operated as a destruction of the Boston location.

*Mesick & Seeley,* for Respondents.

I. The terms of the Boston notice are not only sufficient to include a ledge, but it in terms claims "dips, spurs and angles," and is more comprehensive in its terms than the location notices of many of the most important ledge claims in the Virginia mining district, as well as the Gold Hill district, and which have been held by the district court as valid, and sufficient for acquiring title to a ledge. And besides, the testimony shows that the Boston locators claimed a ledge, prospected for a ledge, and worked a ledge under this notice.

II. The answers of the juror Mathewson did not show that he had formed or expressed any unqualified opinion or belief, either as to the merits of the action or the main question involved therein, but the contrary. Upon his whole examination no court could say that he was incompetent, under the statutes, to act as a juror. The belief or idea which Mathewson said he entertained could not then be deter-

mined to be, and never was, of the merits of the action, or
the main question involved.   It was simply a vague notion
how the claim and ledges lay and ran in the neighborhood
where lay the ground in controversy.   But a full answer on
this point likewise is found in the fact that Mathewson did
not sit in the jury, but was challenged peremptorily by
plaintiff, and there is no fact stated in the record showing
that plaintiff used more than two of the four peremptory
challenges which the statute gave him.   (*Fleeson.* v. *Savage
Silver M. Co.*, 3 Nev. 160–172.)

III.  The intention of the parties to a deed cannot be con-
sidered in opposition to the plain meaning of the words
used in a case like this.   The jury had nothing to do with
the question of the intention of the parties to the deeds.
The legal effect of the deeds was a question for the court.
(*Carpenter* v. *Thurston*, 24 Cal. 268.)

Whether the deeds did or did not carry the Boston title,
depended simply upon the terms of the deed, and the fact
of the Boston and Lucerne locations both being on the same
ledge.

IV.  The court did not err in refusing to instruct the jury
that the legal effect of the Surrhyne deed was not to pass
the Boston title.   That depended upon the fact whether
both the Boston location and the Lucerne location were on
the same ledge, for if they were, Surrhyne being an owner
in both locations, a conveyance by him of the ledge, by
either name, would necessarily carry both his titles. (*Phill-
pots* v. *Blasdel*, 8 Nev. 61.)

V.  The court did not err in refusing to instruct the jury
that the legal effect of the location of the Lucerne claim by
those interested in the Boston location was an abandonment
of the latter.   There is no rule of law which could justify
the giving of any such instruction.   The fact that both lo-
cations were on the same ledge, was not proved till long
after both locations had been made, nor till extensive ex-
plorations had been made.  ."It is very clear" that both
locations on the same ledge could exist together.   When
the discovery was afterwards made that both locations were
on the same ledge, or even immediately upon the making

of the Lucerne location, the Boston owners would still retain their older title, and stand invested with the Lucerne title to the ground covered by the Lucerne location, and not embraced in the Boston location. The idea seems a little strange, that by acquiring two titles to the same ledge the Boston locators forfeited the ledge to parties not in any way in privity with either location.

By the Court, HAWLEY, C. J.:

This is an action of ejectment instituted in pursuance of an act of Congress, to determine the right to certain mining ground for which the Lucerne Mining Company had applied for a patent, and appellant had filed his protest.

The appellant claims title to the mining ground in controversy, under the mining location and claim known as "Waller's Defeat." The respondents claim title under the mining locations and claims known as the "Boston" and the "Lucerne;" the former having been located prior, and the latter subsequent, to the location of the "Waller's Defeat." The jury found a verdict in favor of respondents. Appellant moved for a new trial, and from the order overruling that motion this appeal is taken.

Several points are presented and relied upon by appellant, which will be noticed in their regular order.

1. It is claimed that the court erred in refusing appellant's challenge to the juror Mathewson, upon the ground that said juror had formed and expressed an unqualified opinion as to the course and direction of the Waller's Defeat lode. Appellant claimed at the time of the challenge, and still insists, that this was one of the main questions involved in the case, and that under the provisions of the sixth subdivision of section 164 of the Civil Practice Act (1 Comp. L. 1225), the court should have allowed the challenge. Mathewson, upon his *voire dire*, stated that he was well acquainted with all the mining claims in the locality of the mining ground in dispute; that he had a decided opinion as to the course of all the claims in that vicinity; that he knew nothing at all about the merits of the case; that he had no opinion upon the question as to whether or not the

Waller's Defeat and the Lucerne claims were on the same lode, and no opinion as to whether there was more than one lode. "If," said he, "there are two or three ledges there, I have an idea where they run."

Upon the trial of this cause, there was some controversy as to the course of the various claims. There was testimony offered by respondent tending to prove that the Waller's Defeat ran with a certain cañon; also, testimony offered by appellant tending to prove that it ran over a hill almost at right angles with the cañon. Without deciding the question as to the meaning of the statute, we are of the opinion that the action of the court in refusing the challenge must be sustained upon two grounds: First. It was impossible for the court to determine from the pleadings or facts before it, at the time the challenge was interposed, whether the course of the lode, or lodes, was, or was not, one of the main questions involved in the case. If appellant desired to present the point upon its merits, he should, in the absence of an admission upon the part of the respondent, at least, have offered to prove by some competent evidence that this was one of the main questions involved in the case. Second. From the answers given by the juror, it seems to us apparent that he was of the opinion that the vein, or veins, of ore upon which the respective claims were located ran in the same general direction; otherwise he would certainly have had an opinion as to whether or not there was more than one lode in that locality; and also an opinion as to whether or not the Lucerne and Waller's Defeat were upon the same lode. In reply to the questions asked upon this point, he answered in the negative. If his answers were truthful, is it not clear that he could not have formed the opinion, as argued by appellant, that the Waller's Defeat ran with the cañon, and that the Lucerne ran over the hill nearly at right angles with the cañon? For if that was a fact, the claims could not be upon the same lode. The juror having an opinion as to the general direction of the two claims, if he believed they run at right angles, as a matter of course, must have entertained the opinion that they were not upon the same lode. We think it must have

been as apparent to the court as it is to us from all the answers given by this juror that his opinion was a general one as to the course of the vein, or veins, of ore; that his opinion was that the vein, or veins, of ore ran in the same general direction; but whether there was but one lode, or whether the Waller's Defeat and the Lucerne were upon the same lode he had no opinion. The juror entertained no opinion upon this point prejudicial to the appellant, and the court did not err in refusing the challenge.

2. At the close of the testimony offered on behalf of respondents, appellant moved the court "to strike out as immaterial and irrelevant all the testimony * * * relating to the location of the Boston claim and the work done under that location; also, the notice of location of the Boston Company." The court refused to grant said motion. It is argued that the title claimed by respondents is to a lode; that the Boston notice did not claim a lode, but was what is known as a hill claim; that the only controversy in this action is as to the title to a lode, and that no title to the lode can be acquired from a hill location. The notice of the Boston location reads as follows:

"Notice is hereby given that we, the undersigned, have taken up and claim for mining purposes twelve hundred feet of ground on the face of this hill on the south side of Gold Cañon, running north 1200 feet from stake, with all its dips, angles and spurs, from thence to the centre of the hill. 7 June, 1859." (Names of locators.)

A narrow or illiberal view in the construction of written notices of mining locations would often lead to the deprivation of the rights of the locators. In many of the locations made by miners, especially in new mining districts, the notices of location are frequently found to be vague and indefinite. They are often prepared upon the ground, and usually written by men unaccustomed to the forms used by lawyers. A common sense view must be taken of such notices. What was the intention of the parties who made the location? If, in the present case, we seek for that intention from the language employed in the notice, is it not found in the use of the words "with all its dips, angles and

spurs?" In mining parlance these words have a definite meaning. They refer to a lode, not to surface or hill claims. Although the word ledge, lode, or vein, does not appear in the notice, we think, independent of any testimony offered to prove the intention, that the only fair and reasonable construction to be given to the notice is, that it was the intention of the locators to claim a lode with all its dips, angles, and spurs. If the testimony of witnesses is to be considered, the same conclusion is reached. The testimony of Surrhyne, who wrote the notice of location, clearly shows that it was the intention of the locators to take up four claims upon a blind lode, and not to make a hill or surface location.

3. The deed from Surrhyne to the Lucerne Mining Company, under which the respondents claim title, does not mention the Boston notice or claim. It conveys an undivided interest "of all that gold and silver mining ledge or ground * * * more particularly described as follows, to wit: That set of claims known as the Lucerne Company's claims, of 1800 feet in extent, located on the Lucerne quartz ledge. Said company's claims running northerly from a certain shaft sunk upon the lead aforesaid one thousand feet, and running south from said shaft eight hundred feet, * * * being the undivided interest of the party of the first part, in all that original claim located by the Lucerne Company, and duly recorded in the Gold Hill records."

Did this deed convey any title to the ground claimed by the Boston notice of location? It appears from the testimony that the Boston notice was written and posted upon the ground in July, 1859; that thereafter, in March, 1860, the same parties who had located the Boston, using their own names and the names of ten other persons, located the Lucerne, claiming fourteen claims on the Lucerne ledge. The notices of the Boston and Lucerne locations were both written by Surrhyne, the grantor of the deed to the Lucerne Mining Company. The Lucerne notice was posted on a stake at the north end of the Boston claim, and extended "in a southerly direction twenty-eight hundred feet." The testimony offered upon the part of the respond-

ents tended to prove that the locators of said claims fully complied with all the mining laws, rules and regulations of the district, as to amount of work, posting and recording of notices, etc.; that at the time the locations were made, the parties were prospecting for a blind ledge; that the object of the locators in making the Lucerne location was to keep off other parties from making any locations that would be likely to conflict with the Boston, and possibly to get a little more ground; that subsequent developments established the fact that the Lucerne notice covered the same lode claimed by the Boston notice. Upon this state of facts, appellant asked the court to give the following instruction: "You are instructed that the defendants derived no title whatever to the claim located by the Boston company by the deeds introduced in evidence by the defendants, and that no title to the Boston claim has been shown to be in the defendants, or either of them, by such deeds. The only title conveyed by such deeds is that to the Lucerne claim, located in March, 1860." * * * This instruction was clearly erroneous. Surrhyne, the grantor of one of the deeds, was one of the locators in the Boston. He was also one of the locators in the Lucerne. He afterwards conveyed his undivided interest in the lode or ground described in the deed. The deed was a quitclaim deed. By it he conveyed "all his right, title, interest, claim and demand, of, in and to" the lode and premises therein described. If the Boston notice and the Lucerne notice were posted upon, and claimed the same lode, a conveyance of his interest in the lode necessarily conveyed his interest under both locations, and it was immaterial by what particular name he designated it. (*Phillpotts* v. *Blasdel*, 8 Nev. 61.)

4. Testimony was offered by appellant, in rebuttal of respondent's case, tending to prove that the locators of the Boston claim had treated it as separate and distinct from the Lucerne claim, and several deeds from the various locators in the Boston were introduced in evidence, in some of which the Boston ground was described as being bounded on the north by the Lucerne. The object of this testi-

mony was to show that it was not the intention of Surrhyne at the time of executing the deed, already referred to, to convey his interest in the Boston claim.    Upon this point, appellant asked the court to instruct the jury as follows: " In order to reach the conclusion that any title to the Boston claim is conveyed by the deeds introduced in evidence by the defendants, you must believe that the grantors in those deeds intended to convey such claim, and that the grantees intended to purchase it."

This instruction was calculated to mislead the jury.    The conclusions we have reached upon other points fully justify the action of the court in refusing to give this instruction. But little need be added to what we have already said.    As an abstract proposition of law, it may, for the purpose of the argument, be admitted, that the instruction is correct. It is the intention of the parties that imparts life to every contract, and controls the court in the construction of every written instrument.    But how is that intention to be ascertained?    When the language of a deed is doubtful, the first thing we inquire is: What was the intention of the parties?    But courts do not always seek for the intention of the parties independent of the language used in the deed. On the contrary, we think it is a well-settled legal principle, that where the language of a deed admits of but one construction, and the location of the lode or premises intended to be conveyed is clearly ascertained by a sufficient description of the grounds, in the deed, by courses, distances or monuments, it cannot be controlled by any different exposition derived from the acts of the parties in locating the premises, or from the failure of the grantor to designate the various names by which the ground conveyed was at different times known.    It is only when the language is equivocal, imperfect or ambiguous, and the location of the ground, or identity of the lode, or lodes, made doubtful, that the construction put upon the deed by the parties who located the ground may be resorted to to aid in ascertaining the intention of the parties.    The very object of a description in a deed is to define what the parties intended, the grantor to convey, and the grantee to receive, by the

conveyance. That intention, in the present case, is plainly deduced from the language contained in the deed. The description of the ground conveyed is definite: "That gold and silver mining ledge or ground * * * running northerly from a certain shaft sunk upon the lead aforesaid one thousand feet; and running south from said shaft ,eight hundred feet." It was for the jury to determine whether there was but one lode; whether the Boston notice and the Lucerne notice were posted upon, and claimed the same lode, and whether the description in the deed covered the ground included in the Boston notice? And it was for the court to determine the legal effect to be given to the deed. If it was admitted that there was but one lode, that both notices of location were on that lode, and that the ground located by the Boston company was within the limits of the ground conveyed, it seems to us too clear for argument, that the effect of the language used in the deed was to convey the grantor's interest in that lode, from whatever locations it may have been acquired, or by whatever name it may have been designated.

5. Finally, it is contended that the court erred in refusing to give this instruction: "The jury are instructed that if they believe from the evidence that the locators of the Boston claim re-located the Lucerne claim upon the same ledge as that which they claimed under the notice of location of the Boston company, commencing at the north stake of the Boston claim and claiming 2800 feet, including the ground claimed by the Boston company's notice, such relocation is an abandonment of the Boston claim, and they must exclude from their consideration the Boston claim and all work done under it."

This instruction presents the simple question whether, as matter of law, the fact of making a second location upon the same lode with the names of other parties included in the notice of location, is an abandonment of the first location. The answer to this is plain. The question of abandonment is one of intention. Whether it was the intention of the original locators of the Boston claim to abandon their interest in the ground derived from the Boston notice of loca-

tion and the work done under it, was a question of fact for the jury to determine from all the facts and circumstances of the case. It is sometimes difficult in new mining districts, the mining ground being undeveloped, and the course of the croppings, if any, not being clearly defined, to determine the direction of the lode, or to determine the fact whether or not there is but one lode. We believe it is not an uncommon practice for miners in making locations under such circumstances, to post one or more picket notices of location as a protection to the original claim, to keep off other parties from making any locations that would be liable to interfere with the first location. Now when the developments establish the fact that the subsequent notices were really posted on the same lode as the first, it seems to us, in the absence of any mining law, rule or regulation of the district, that such an act shall work a forfeiture of the rights of the locators under the first notice, that the argument advanced by appellant that a second location made under such circumstances, for the express purpose of protecting the original location, of itself, constitutes an abandonment of the first notice, is illogical and unsound.

We are not called upon in this case to determine what, if any, rights were acquired by the second notice of location; or the rights, if any, of the additional locators in the second notice, and upon these questions we express no opinion.

The judgment of the district court is affirmed.

Mr. Justice BEATTY concurred in the judgment.