[No. 1900]

# HERRING–HALL–MARVIN SAFE COMPANY (a Corporation), Appellant, *v.* LETSON BALLIET, Respondent.

[145 Pac. 941]

1. Appeal and Error—Review—Verdict.

    The finding of the jury on controverted issues of fact, if supported by substantial evidence, cannot be disturbed on appeal.

2. Sales—Actions by Seller—Evidence—Mutual Rescission.

    In an action for the purchase price of a safe which, after being rejected by the buyer, was delivered by order of the salesman to a firm in which the original buyer was a partner, evidence *held* sufficient to warrant the jury in finding that there had been a mutual rescission of the original contract of sale if the salesman had authority to make such rescission.

3. Sales—Actions by Seller—Questions for Jury—Condition.

    Where a written order for the purchase of a safe had a question mark in the place left in the order for the lettering to be put on the safe, and no designation as to the interior arrangement of the safe, it was a question of fact whether the order was conditioned, as claimed by the buyer, upon his future determination as to the lettering and the interior arrangement.

4. Evidence—Parol Evidence—Incomplete Contract.

    The order was on its face incomplete, so that parol evidence was admissible to supply the missing terms.

5. Principal and Agent—Existence of Relation—Sufficiency of Evidence.

    In an action for the purchase price of a safe, evidence *held* sufficient to warrant the jury in finding that the salesman of the seller had authority to rescind the contract.

6. Principal and Agent—Existence of Relation—Question for Jury.

    The existence or nonexistence of an agency is a question of fact for the jury.

7. Principal and Agent—Existence of Relation—Circumstantial Evidence.

    Agency may be shown by circumstances and the course of dealing.

8. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE—
IMMATERIAL EVIDENCE.

Where the jury found that a contract for the sale of a safe
had been mutually rescinded, the seller was not prejudiced by
the admission of evidence as to a warranty that the safe was
fireproof.

APPEAL from the Fifth Judicial District Court, Nye
County; *Mark R. Averill,* Judge.

Action by the Herring-Hall-Marvin Safe Company
against Letson Balliet. Judgment for defendant, and
plaintiff appeals. **Affirmed.**

*McIntosh & Cooke,* for Appellant.

*P. M. Bowler,* for Respondent.

By the Court, McCARRAN, J.:

This is an action brought by Herring-Hall- Marvin Safe
Company, a corporation, against Letson Balliet, to recover
the price of two safes. The complaint alleged two causes
of action; one for the sum of $616, less a set-off of $42.80,
for safe No. 187; the other for $469 for safe No. 194.
Respondent by his answer admitted the indebtedness of
$616, less $42.80 paid upon said sum, for safe No. 187, but
denied the indebtedness of $469 on safe No. 194, the sub-
ject of the first cause of action. The action proceeded
to trial by a jury, upon the right of plaintiff to recover
for safe No. 194.

The record discloses an instrument purporting to be an
order, in words and figures as follows:

"Herring-Hall-Marvin Safe Company,                    20923

"Successor to Hall's Safe and Lock Company,

"San Francisco.

"Please ship as directed one Number 194 safe of the
dimensions and plans of interior as specified on back of
this order, marked to L. Balliet, town of Tonopah, county
of Nye, State of Nevada, via Hazen, for which I agree to
pay to your order the sum of (469.00) four hundred sixty-
nine dollars gold coin, rent as follows: Cash on receipt
of safe.

"Freight and delivery charges to be paid by f. o. b. Sacramento.

"Cash paid with this contract $_ _ _ _

"L. Balliet.

"Read This Carefully Before Signing.

"Approved: N. O. S. Ford, Asst. Mgr.

"Order for 194 Safe.        52465.

"For L. Balliet.

"J. F. Waterhouse, Salesman.

"Inside Measure $\begin{cases} 56 \text{ inches high} \\ 38 \text{ inches wide} \\ 18 \text{ inches deep} \end{cases}$

"Lettering to be put on safe_ _ _ _ _ _ _ _ _ _ ?_ _ _ _ _ _ _ _ _ _

"Plan of interior: (When safe is to have regular plan, it is unnecessary to draw any diagram, but simply say, "Plan usual style.")

"[Seal of Herring-Hall-Marvin Safe Company.]  1948."

This instrument was signed by respondent, Balliet, on or about November 27, 1906, and on the same day respondent gave a similar order, a copy of which is also contained in the record, for safe No. 187, the subject of the second cause of action.  Safe No. 187 was received by respondent pursuant to the order given.  On the arrival of safe No. 194 in Tonopah it appears from the record that notice was sent to respondent, Balliet.  Respondent refused to accept the safe.  It is the contention of appellant that order No. 194, when approved by appellant through its agent, N. O. S. Ford, constituted a complete contract.

Subsequent to the refusal of respondent to accept safe No. 194, respondent entered into a copartnership with one Murphy, which copartnership was known and designated as Murphy-Balliet Company, with its headquarters in Tonopah, Nevada.  Some time after the formation of the copartnership the record discloses that safe No. 194 was removed from the depot of the Tonopah and Goldfield Railroad Company by the Wittenberg Warehouse Company to the place of business of Murphy-Balliet Company; and it is the contention of respondent that there was a mutual rescission of the contract established by the terms

of order No. 194, and that the sale and delivery of the safe to Murphy-Balliet Company was an independent transaction and a resale by appellant of safe No. 194 to Murphy-Balliet Company by and through the agent of appellant, J. F. Waterhouse.

At the opening of its case, appellant called respondent, Balliet, to the stand to identify order No. 194, and also to identify order No. 187. It appears from the testimony of respondent, Balliet, as we find it in the record, that the safe mentioned in order No. 194 was not to be shipped to respondent until he should designate the interior plan and cabinet work, and also direct the lettering that was to be put on the safe. It appears from the testimony of both respondent, Balliet, and J. F. Waterhouse, who was at least acting in the capacity of soliciting salesman for appellant, that the order was left blank as to the lettering to be put on the safe, and that the order contained nothing in the way of designating the cabinet work for the interior of the safe.

Order No. 194, as it appears in the record, contains a question mark following the words "lettering to be put on safe," and this question mark was the subject of some considerable testimony in way of explanation during the course of the trial. It also appears from order No. 194, as we find it in the record, that there is an absence of instruction as to interior cabinet work. The testimony of the soliciting salesman, Waterhouse, is sharply in conflict with the testimony of respondent, Balliet, as to this phase.

[1] However this may be, if the jury found—as they undoubtedly did find—that the safe No. 194, designated by plaintiff's "Exhibit A," was not to be shipped to the respondent until he had given instructions as to lettering and as to the interior construction, their finding in this respect, being, in our judgment, supported by sufficient and substantial evidence, must not be disturbed.

[2] From the testimony of the witnesses C. F. Wittenberg and J. H. McQuillan, members of the firm of Wittenberg Warehouse and Transfer Company, on whose

premises the safe remained from the time of its delivery by the Tonopah and Goldfield Railroad Company until the time at which it was removed to the office of Murphy-Balliet, it is disclosed that the storage charges on the safe were paid by J. F. Waterhouse, and these charges were paid by him at the time at which he gave orders to the Wittenberg Warehouse and Transfer Company to deliver the safe to the office of Murphy-Balliet. Moreover, it is disclosed that the freight charges from Sacramento to Tonopah on safe No. 194 were paid by the check of Murphy-Balliet.

On the question as to whether or not the contract for safe No. 194 was executory on the part of respondent, and as to whether or not the same was mutually rescinded and terminated, the respondent, by way of defense, interposed matters in avoidance, which were questions of fact for the jury to determine. These questions primarily were as to whether or not certain lettering, to be placed upon the safe, should be designated before the time of shipment; as to whether or not interior equipment should be designated before the time of shipment; as to whether or not the order, signed by respondent, but incomplete as to these features, should be withheld by the soliciting salesman, and not sent to the main office until the instructions should be given by the respondent. All of these features were questions of fact to be determined by the jury; and the condition of order for safe No. 194, with the question mark contained in the body of the order, and the absence of instructions as to internal equipment, together with the testimony of the witness McQuillan as to the positive refusal of the respondent Balliet to receive the safe; and the further fact that the freight charges on the safe from Sacramento to Tonopah were never paid by the respondent, Balliet, but were paid by the check of Murphy-Balliet, a copartnership; and the further fact, disclosed by the testimony of the witness McQuillan, that the storage charges on the safe were paid by the soliciting salesman, Waterhouse, into whose hands the incomplete order for safe No. 194 had been placed

by respondent—these matters, disclosed by the record, constituted, in our judgment, substantial evidence upon which the jury was warranted in finding that there was a rescission of the contract.

[3] The testimony of the respondent, Balliet, was to the effect that the order for safe No. 194 was a conditional order, and that the terms and conditions were reserved by him for future determination, and in this respect his testimony is supported by a physical fact; namely, the order itself, with its contained interrogation mark following the words "lettering to be put on safe," which at least was a circumstance strongly corroborative of the testimony of respondent, Balliet. As to whether or not the order for safe No. 194 was a conditional order, was a question of fact upon which the jury were the exclusive judges.

[4] It is the contention of appellant that the court erred in admitting parol evidence with reference to the terms and conditions of the contract. Appellant's contention in this respect might be well taken, if the contract did not bear evidence of incompleteness. Here was an instrument, bearing upon its face a sign which called for an answer or explanation, and which of itself constituted the very strongest evidence of something lacking—something to be supplied by some one before the party who was to assume the obligation of filling the order could do so. The interrogation mark on the face of the order, and the absence of designation as to internal equipment, were evidences of incompleteness, and were also evidences of a something absent, unexplained, and essential to the complete fulfilment of the contract; hence parol evidence was properly admissible in explanation.

[5] The organization of the copartnership of Murphy-Balliet Company, and its organization to do business, is not disputed. It cannot be seriously contended, in our judgment, that the subsequent delivery of the safe by the soliciting salesman, Waterhouse, to the copartnership of Murphy-Balliet constituted a delivery to respondent.

[6] The existence or nonexistence of an agency is a

question of fact for the jury. (*Cook* v. *Smith, et al.,* 73 Ill. App. 483; *Iroquois Furnace Co.* v. *Ross,* 76 Ill. App. 549.)

[7] Agency need not be proved by direct proof, but may be shown by circumstances and the course of dealing. (*Crosno* v. *Bowser Milling Co.,* 106 Mo. App. 236, 80 S. W. 275; *Nutting* v. *Kings County L. El. Ry. Co.,* 21 App. Div. 72, 47 N. Y. Supp. 327.)

If the jury found as a fact that Waterhouse did negotiate for a sale of the safe to the copartnership of Murphy-Balliet after the refusal of respondent, Balliet, to accept the same, then this act of itself constituted the very strongest evidence of mutual rescission of the original contract, if Waterhouse had the authority to enter into such mutual rescission. It is the contention of appellant that Waterhouse acted in no other capacity than that of soliciting salesman; but in this respect we deem it sufficient to say that the oath of J. F. Waterhouse, made in verification of the plaintiff's complaint, together with the affidavit of J. F. Waterhouse, made pursuant to the issuance of the writ of attachment, was sufficient, in our judgment, to warrant the jury in believing and finding that J. F. Waterhouse was the duly authorized and acting agent of plaintiff, and, as such, had sufficient authority to bind his principal in the mutual rescission. The verification is as follows:

"State of Nevada, County of Nye—ss.:

"J. F. Waterhouse, being first duly sworn according to law, on his oath deposes and says: That he is the duly authorized and acting agent of the plaintiff above named, and makes this verification for and on behalf of plaintiff and for its use and benefit, and for the reason that affiant is more familiar with the facts above stated than any other agent or officer of plaintiff; that affiant has heard read the foregoing complaint and knows the contents thereof; that the same are true of his own knowledge, except as to those matters therein stated to be on information or belief, and as to those matters be believes it to be true.                                    J. F. Waterhouse.

"Subscribed and sworn to before me this 8th day of June, 1908.        H. R. Cooke, Notary Public."

Another matter of evidence, which would have warranted the jury in finding that Waterhouse had authorization to bind his principal, was the fact that on the original order for safe No. 194 certain printed matter, bearing upon the right of the salesman or representative of appellant to change the terms and conditions of the order, were, by act of Waterhouse himself, as admitted by him in his testimony, stricken out with indelible lead pencil; and this order, with such portions stricken out, was received by N. O. S. Ford, assistant manager of appellant corporation, at its offices in San Francisco, and was by the said Ford approved, as appears from the instrument itself, and also from the testimony of the witness Giesting. The approval on the part of the·assistant manager of the appellant corporation of the acts of Waterhouse in striking from the contract certain salient features thereof was, to say the least, strongly indicative of a wide scope of authority conferred on Waterhouse by the appellant company. If Waterhouse, acting as soliciting salesman for the appellant company, had authority to strike from the uniform contract, authorized by the appellant company, certain features which of themselves had a more or less salient effect upon the transaction, then, in our judgment, the jury was warranted in finding that the authority conferred by appellant upon its soliciting salesman was sufficient in scope to bind appellant by the acts of Waterhouse in a rescission of the contract, if it found that Waterhouse agreed to a rescission when the safe arrived at Tonopah and was refused by respondent, Balliet. (*Clarke* v. *Lyon County,* 8 Nev. 188; *Ellis* v. *Central Pacific Railroad Co.,* 5 Nev. 256; *Rankin* v. *New England and Nevada Silver Mining Co.,* 4 Nev. 78.)

If the jury found, as it undoubtedly did find by its general verdict in favor of respondent, that as to order for safe No. 194 there was a mutual rescission of the contract, and also found that subsequent to such mutual

rescission there was a resale of the safe to Murphy-Balliet, there being, in our judgment, substantial evidence to support its findings in this respect, the same should not be disturbed.

In this case the briefs of appellant and respondent touch upon many side issues which, in our judgment, have no bearing upon the principal issue in the case, and hence will not be discussed.

[8] It is the contention of appellant that the court erred in admitting evidence as to an alleged fireproof warranty, alleged to have been given by Waterhouse to Murphy-Balliet. We deem it unnecessary to pass upon this matter, inasmuch as, if the same was error, it was harmless error, and the rights of appellant were not materially affected thereby. The question as to the fireproof character of the safe, or as to any warranty given with reference thereto, has nothing to do with the main issue in the case.

The judgment of the lower court and the order denying a new trial are affirmed.

It is so ordered.