NORTHERN NEVADA MOBILE HOME BROKERS, A NEVADA CORPORATION, AND HAROLD M. SMITH, APPELLANTS, v. DALLAS R. PENROD AND PAULA L. PENROD, RESPONDENTS.

No. 11501

April 30, 1980

610 P.2d 724

---

*James F. Sloan,* Reno, for Appellants.

*Vargas, Bartlett and Dixon,* and *Phillip W. Bartlett,* Reno, for Respondents.

## OPINION

*Per Curiam:*

This is an appeal from a judgment in favor of Dallas Penrod and Paula Penrod, against appellants Northern Nevada Mobile Home Brokers (hereinafter referred to as Northern Nevada) and Harold M. Smith. We affirm the judgment.

Mr. and Mrs. Penrod testified that they owned a mobile home and real property near Reno. In June, 1976, the Penrods decided to sell their property and move to San Francisco so that Mr. Penrod could begin medical school.

The Penrods hired Northern Nevada to assist in the sale of the home. The Penrods testified that they had been induced to contact Northern Nevada by television, radio and newspaper advertisements which stated that there were no commissions, no closing costs, and that Northern Nevada would obtain "top dollar" on the sale of a mobile home.

The Penrods signed an "Exclusive Authorization to Sell," which provided for a sales price designed to yield $2,000 net to the sellers. The authorization was to expire on September 8, 1976. after the authorization was signed, Mr. Penrod moved to San Francisco to begin medical school, while Mrs. Penrod remained in the Reno area pending the sale of the home.

The Penrods testified that in early September, 1976, they met with appellant Smith, who was a manager for Northern Nevada. Appellant Smith represented to the Penrods that a potential buyer had been found, but that the buyer was only able to pay a price of $1,000 over the amount necessary for the Penrods to pay off their existing mortgage on the property. Appellant Smith also represented to the Penrods that the $1,000 would go towards commissions and closing costs. Thus, the Penrods would receive no net proceeds from the sale. Finally, appellant Smith represented that it would be difficult to find a buyer who would pay more for the house, and that the present deal was the best that Northern Nevada had to offer.

On September 3, 1976, in reliance upon the representations made by appellant Smith, the authorization to sell was modified to provide for a sales price yielding "payoff only," instead of $2,000 net to the Penrods. Other documents, including a power of attorney, were also signed. A sale of the home was eventually consummated, and the Penrods' mortgage was paid off. The Penrods received no net proceeds from the sale.

In October, 1976, the Penrods went to the mobile home to help the new buyers "winterize" the trailer. During a casual conversation with the buyers, the Penrods discovered that the selling price had acutally been approximately $3,400 in excess of the mortgage payoff amount.[1] The Penrods made a demand upon Northern Nevada in the amount of $2,000, which the Penrods beleved they should receive. This litigation was eventually commenced, and was based on a fraud theory. A district court jury made an award to the Penrods in the amount of $2,000 compensatory damages and $30,000 punitive damages.

---

[1]The buyer testifed that he had previously been told by Northern Nevada not to talk to the Penrods about the money aspect of the sale.

1.   Appellants first contend that the district court erred by giving an instruction which stated that appellants Smith and Northern Nevada were agents of the Penrods.[2] Appellants further contend that the district court erred by refusing instructions offered by appellants which would have left the question of agency for the jury to decide.

As a general rule the existence or non-existence of an agency is a question of fact for the jury. H.-J.-M. Safe Co. v. Balliet, 38 Nev. 164, 145 P. 941 (1914). However, it is not error for the trial court to take from the consideration of a jury a fact which is clearly proved and not materially disputed. *See* Adams v. Smith, 19 Nev. 259 (1886) (authority of agent; ratification by principal). Furthermore, the legal effect of a document is generally a question of law for the trial court. *See* Nev. Industrial Comm. v. Dixon, 77 Nev. 296, 362 P.2d 577 (1961); Weill v. Lucerne Min. Co., 11 Nev. 200 (1876).

In this case the district court found that there was no real dispute in the testimony as to the facts regarding agency. We agree. At the time of the actionable misrepresentation the listing agreement was still in effect. Appellants contend that the listing agreement was a contract of sale to Northern Nevada rather than a contract of agency. This contention is wholly without merit. The document granted to Northern Nevada an *"exclusive and irrevocable right to sell said property."* (Emphasis in original.) In addition to other language in the agreement establishing an agency relationship, the document specifically referred to Northern Nevada as "said agent." We believe the document clearly and unequivocally created an agency relationship between the Penrods and Northern Nevada.

The argument of appellants that the transaction on September 3, 1976, was actually a sale by the Penrods to Northern Nevada, rather than the creation of an agency relationship, is irrelevant. The actionable fraud consisted of misrepresentations which occurred *before* modification of the listing agreement, and which were relied upon by the Penrods in their agreement to the modification.

---

[2]The challenged instruction read as follows:

HAROLD M. SMITH and NORTHERN NEVADA MOBILE HOME BROKERS were agents of DALLAS and PAULA PENROD at all times relevant to this case.

An agent engaged in negotiating the sale of property for his principal must act with the utmost good faith, loyalty, and honesty twoard his principal and must disclose facts within or which may come to his knowledge which might influence the principal in the transaction.

Even if there was a material dispute as to the agency relationship, we are not presuaded that a different result would have been reached had the question been left to the jury. The existence of an agency relationship is not essential to a cause of action for fraud, and even if no fiduciary relationship existed, once appellant Smith discussed the question of whether a higher price was obtainable he had a duty to speak the whole truth and not by concealment make his statements untruthful and misleading. Holland Rlty. v. Nev. Real Est. Comm'n, 84 Nev. 91, 436 P.2d 422 (1968). Thus, appellant Smith's misrepresentations consituted actual fraud regardless of his relationsip with the Penrods.

We conclude that the district court did not commit prejudicial error by giving the challenged instruction and by refusing appellants' proposed instructions.

2. Appellants also contend that the award of punitive damages in the amount of $30,000 was excessive. We disagree.

Punitive damages are designed to punish a wrongdoer for his act, and to deter others from acting in a similar fashion, but such damages should not be influenced by passion and prejudice on the part of the jury. Miller v. Schnitzer, 78 Nev. 301, 371 P.2d 824 (1962). Furthermore, the amount of an award of punitive damages need have no particular relationship to the amount of compensatory damages. Randono v. Turk, 86 Nev. 123, 466 P.2d 218 (1970).

In this case the jury found that appellants were guilty of fraud. Appellants were apparently found to have breached their professional duties to act in the utmost good faith and to disclose all material facts to the Penrods before dealing for their own benefit. *See generally* Jory v. Bennight, 91 Nev. 763, 542 P.2d 1400 (1975); Holland Rlty. v. Nev. Real Est. Comm'n, *supra*. Furthermore, the evidence at trial disclosed that Northern Nevada has a substantial net worth. There has been no suggestion made by appellants that the award in this case would result in financial annihilation. *See* Tahoe Village Realty v. DeSmet, 95 Nev. 131, 590 P.2d 1158 (1979). In light of appellants' conduct and their financial status, we do not believe the award of $30,000 punitive damages was excessive.

3. The other contentions raised by appellants have been considered, and we find them to be without meit.

The judgment is affirmed.