**Cal LOMBARDI, individually and dba Cal's Jackpot Casino, Plaintiff,**

v.

**MARYLAND CASUALTY COMPANY, Does I through V, inclusive, and Roe Corporations I through V, inclusive, Defendants.**

**No. CV–S–94–910–PMP (LRL).**

United States District Court,
D. Nevada.

July 20, 1995.

Orin G. Grossman, Las Vegas, NV, for plaintiff.

J. Mitchell Cobeaga, Naomi R. Arin, Beckley, Singleton, Jemison & List, Las Vegas, NV, for defendants.

*ORDER*

PRO, District Judge.

This is an action for declaratory relief and damages in which Plaintiff Cal Lombardi, individually and d/b/a Cal's Jackpot Casino

("Lombardi") alleges that he was the insured under a commercial general liability policy issued by Defendant Maryland Casualty Company ("Maryland Casualty"). On December 27, 1993, Maryland Casualty informed Lombardi that the company would not indemnify him for punitive damages, if awarded, in pending litigation. Plaintiff seeks declaratory relief that the policy does cover punitive damages, and further seeks compensatory and punitive damages against Maryland Casualty. *See* Complaint (# 1B).

Before the Court is Defendant's Motion for Partial Summary Judgment (# 16) ("Motion") filed by Defendant Maryland Casualty Company ("Maryland Casualty") on June 5, 1995. Plaintiff Cal Lombardi, individually and d/b/a Cal's Jackpot Casino ("Lombardi") filed his Opposition to Defendants' Motion for Partial Summary Judgment (# 17) on June 27, 1995. Defendant Maryland Casualty filed its Reply (# 18) on July 10, 1995. By this Motion, Defendant requests the Court grant partial summary judgment on the issue of whether Plaintiff's general commercial liability policy, the Special Multi Peril Policy (the "Policy"), covers punitive damages.

## I. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Architectural Bldg. Prods, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968), *reh'g denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *Commodity Futures Trading Com. v. Savage*, 611 F.2d 270 (9th Cir.1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Board v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979), *reh'g denied*, 441 U.S. 968, 99 S.Ct. 2420, 60 L.Ed.2d 1074 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982); *Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for

summary judgment purposes. *Poller v. CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group International, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1560 (Fed.Cir.1988).

## II. Choice of Law

■ Since federal jurisdiction is invoked upon diversity of citizenship, a federal court is bound to apply the substantive law of the state in which it sits. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Strassberg v. New England Mutual Life Ins. Co.,* 575 F.2d 1262 (9th Cir.1978). In the absence of controlling forum state law, a federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the substantive issue. *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir.1986), *reh'g denied, modified,* 810 F.2d 1517 (9th Cir.1987); *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980). In performing that function, this Court may be aided by reviewing well-reasoned decisions from other jurisdictions. *Takahashi,* 625 F.2d at 316.

## III. Nevada Public Policy

■ Defendant asserts that Nevada public policy precludes indemnification of punitive damages. Under Nevada law, punitive damages are awarded when a defendant is "guilty of oppression, fraud or malice, express or implied." Nev.Rev.Stats. 42.005(1) (1994). These damages are awarded in addition to those for compensation for the sake of example and for the purpose of punishing the wrongdoer. *Id.*

In *Siggelkow v. Phoenix Ins. Co.,* the Nevada Supreme Court clearly outlined the public policy purposes behind an award of punitive damages. Siggelkow was injured in a car accident, and received a judgment against the other driver which included punitive damages. *Siggelkow v. Phoenix Ins. Co.,* 109 Nev. 42, 846 P.2d 303, 304 (1993). Siggelkow recovered the amount of the compensatory award from the other driver's insurance company, but agreed not to execute on the punitive award against either the driver or the driver's insurance company. *Id.* Instead, Siggelkow filed an uninsured motorist claim against his own insurance company, claiming the phrase, "[t]he company will pay all sums which the insured … shall be legally entitled to recover" allowed him to collect the amount of the punitive damages. *Id.*

The Nevada Supreme Court disagreed, emphasizing the purposes behind punitive awards. The Nevada Supreme Court stated:

> Punitive damages … are not designed to compensate but rather to punish and deter oppressive, fraudulent or malicious conduct. Punitive damages are not awarded as a matter of right to an injured litigant, but are awarded in addition to compensatory damages as a means of punishing the tortfeasor and deterring the tortfeasor and others from engaging in similar conduct. Accordingly, a punitive damage award has as its underlying purpose public policy concerns unrelated to the compensatory entitlements of the injured party.

*Siggelkow,* 846 P.2d at 304–5 (citations omitted). The Nevada Supreme Court continued, emphasizing that in order to effectuate these purposes, the wrongdoer must bear the burden of paying the award: "[I]t is incumbent upon the party whose conduct was so outrageous as to merit punishment by means of punitive damages to bear the burden of paying the award. Only then will the goal of punishment and deterrence be effectuated." *Siggelkow,* 846 P.2d at 305 (quoting *New Hampshire Ins. Co. v. Gruhn,* 99 Nev. 771, 670 P.2d 941, 942 (1983)). The Nevada Supreme Court then affirmed the lower court's

granting of summary judgment in favor of the insurer. *Siggelkow,* 846 P.2d at 306.

Similarly, the Nevada Supreme Court in *New Hampshire Ins. Co. v. Gruhn* held that a surety was not liable for punitive damages on a bond issued to a mortgage company. *New Hampshire Ins. Co. v. Gruhn,* 99 Nev. 771, 670 P.2d 941, 943 (1983). The surety bond company undertook to "pay all damages suffered by any person ... by reason of any fraud, dishonesty, misrepresentation or concealment of material facts," but it refused to pay $5,000 in punitive damages that was recovered against the mortgage company for its fraudulent misrepresentation. *Id.* 670 P.2d at 942. The Nevada Supreme Court reasoned that public policy would prevent forcing the surety bond company to indemnify the mortgage company, since only the guilty party should bear the cost of a punitive damage award. *Id.* 670 P.2d at 943.

These cases stand for the proposition that the wrongdoer must pay a punitive damage award, not the insurer. The Nevada Supreme Court clearly prohibits, on grounds of public policy, indemnification for punitive damages. *See Siggelkow,* 846 P.2d at 305; *Gruhn,* 670 P.2d at 943; *see also Bader v. Cerri,* 96 Nev. 352, 609 P.2d 314, 318 (1980) (public policy behind punitive damages is to punish the wrongdoer for his act and to deter others from acting in a similar fashion); *Northern Nev. Mobile Home Brokers v. Penrod,* 96 Nev. 394, 610 P.2d 724, 727 (1980) (same); *Allen v. Anderson,* 93 Nev. 204, 562 P.2d 487, 489 (1977) (same); *Caple v. Raynel Campers, Inc.,* 90 Nev. 341, 526 P.2d 334, 336–37 (1974) (same); *Nevada Cement Co. v. Lemler,* 89 Nev. 447, 514 P.2d 1180, 1183 (1973) (same); *Miller v. Schnitzer,* 78 Nev. 301, 371 P.2d 824 (1962) (same).

Plaintiff does not dispute the reasoning and holdings in these cases. Instead, Plaintiff focuses on the behavior of Maryland Casualty in undertaking Lombardi's defense. However, this is not the subject of the present Partial Motion for Summary Judgment.

Moreover, Plaintiff also does not indicate language in the Policy that would otherwise cover an award of punitive damages. Indeed, the language in the Policy appears to preclude indemnification of punitive damage awards. The Comprehensive General Liability section of the Policy indicates that "[t]he Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury ... caused by an occurrence." *See* Policy. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *See id.* Finally, the extended bodily injury coverage clause broadens the definition of occurrence to include "any intentional act by or at the direction of the insured which results in bodily injury, if such injury arises solely from the use of reasonable force for the purpose of protecting persons or property." *See id.*

The Nevada Supreme Court indicates that the terms "bodily injury" only encompass compensatory damages, not punitive damages, for indemnification purposes. *Siggelkow,* 846 P.2d at 305. Indeed, the Policy defines "bodily injury" as "bodily injury, sickness, or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." *See* Policy. The clear terms of the Policy prevent indemnification of punitive damages. *See Siggelkow,* 846 P.2d at 305. Accordingly, the Court will grant Defendant's Motion for Partial Summary Judgment (# 16).

IT IS THEREFORE ORDERED THAT Defendant's Motion for Partial Summary Judgment (# 16) is GRANTED.