FRED D. WEST, an Individual, Doing Business Under the Name and Style of A-1 Service, Appellant, v. MABEL EDWARDS, Respondent.

No. 3376

March 12, 1943.                    134 P. (2d) 932.

*Milton B. Badt,* of Elko, for Appellant.

*Gray & Horton,* of Ely, for Respondent.

## OPINION

By the Court, Orr, C. J.:

This appeal requires a construction of the following provision of a lease entered into by Fred D. West and one E. Edwards, formerly the husband of the respondent but now deceased, to wit: "It is understood and agreed that the lessor will furnish to said lessee * * * all necessary light and power up to a maximum of 4,000 watts; it being understood that the lighting and power service now available and used upon said leased premises does not exceed 4,000 watts, and in the event the lessee makes changes in his present light and power service that will utilize in excess of 4,000 watts, the lessee will pay to the lessor for such excess seven and one-half cents (7½¢) per kilowatt hour; * * *."

Respondent succeeded to the interest of said E. Edwards in said lease, by reason of a decree of court distributing all the property of said deceased to said respondent as the surviving wife.

Respondent asserts that the question to be answered in arriving at a proper interpretation of said lease is: How much electrical energy is the lessee entitled to receive from the lessor free of charge before respondent becomes liable to appellant, the lessor, for excess at the rate of seven and one-half cents per kilowatt hour? This

question respondent answers by asserting that the free power she is entitled to is an amount equal to 4,000 watts flowing through the wires for every minute of every hour of every day of the month. The trial court considered such to be the proper solution, and stated its position in the following language: "That the statements made (referring to the paragraph of the lease quoted supra) mean that the lessee may use all the electricity she may want, but should the lessee use electricity in excess of a steady flow of electricity amounting to more than 4,000 watts she would be required to pay for the same at the rate of seven and one-half cents per kilowatt hour."

In order to properly appraise what the parties had in mind when the term "4,000 watts" used in the paragraph quoted supra was incorporated therein, a consideration of the situation of the parties as it existed at the time is necessary. The leased premises are situated at West Wendover, Elko County, Nevada, and the electricity used in the business, which prior to the execution of the lease had been conducted by appellant, was generated upon the premises. No meters were installed at the time. From a reading of the record it appears that no knowledge of the actual amount of energy consumed, that is as measured in kilowatt hours, was had by the parties. However, it is apparent that appellant and respondent were aware of the then existing installations which consumed electrical energy; also they were aware of the amount of power, as defined in watts, which was connected up. In view of the stipulation in the paragraph of the lease quoted supra, namely: "It being understood that the lighting and power service now available and used upon said leased premises does not exceed 4,000 watts," it would seem unreasonable to suppose that the parties were referring to a use of the available power for every minute of every hour of every day in the month; that necessarily would have been the situation if the parties had in mind the construction

which respondent gives the lease, because they speak of the available power being used. We cannot reasonably assume that the electric energy was flowing into the consuming fixtures in such a constant and uniform manner. This appeals to us as being a rather convincing circumstance in favor of the construction that the parties were dealing with connected power or installations rather than energy which was being used. It is a fair deduction from the evidence that the parties, by agreeing to the phrase "4,000 watts" as used in the lease, took the amount of watts represented by each installation and totaled them; for example, let us say they found a globe of 100 watts installed, another one of 50 watts, and a kitchen range of several hundred watts, etc., the grand total of which equaled 4,000 watts connected up to the wires which ran from the dynamo to the different rooms and places where lights and energy were used. The lessor, as well as the lessee, knew or were in a position to know the approximate amount of time the different installations were in use; that certain lights would only be used for a certain period of time, and that energy connected up to machinery would be in operation for a limited period during any twenty-four hours. No way existed of determining how much electrical energy, as measured in kilowatt hours, was ordinarily used during a twenty-four-hour period. But having in mind the power connected up and how it would ordinarily be used during each day, the lessor expressed a willingness to furnish the electricity that would take care of the then existing installations, and agreed to keep available an amount of power necessary to operate those installations and fixtures for the time that they would ordinarily and reasonably be used, and to do so without cost. The parties unquestionably understood that the business conducted by the lessee would increase, and being so advised, they further understood that an increase in business would require more lighting facilities or other power-consuming instrumentalities, and consequently the amount of energy needed

would be greater. The appellant sought to protect himself in furnishing an anticipated greater consumption, by providing that such an increase would be charged for at seven and one-half cents per kilowatt hour.

■ In arriving at an answer to the question as to the amount of electricity respondent was to be allowed to use free of charge, we are convinced the intention of the parties was to limit it to the electrical energy which the respondent would use through the installations existing at the time the lease was executed, or their equivalent, and that the charge of seven and one-half cents per kilowatt hour would be for the energy used in installations in excess thereof. The installations existing at the time of the execution of the lease represented the connected load at that time.

As anticipated by the parties, the business expanded, and new installations were required and made, which increased the connected load from 4,000 to 17,473 watts, an increase of 13,473 watts. Mr. Lundergreen, an expert witness, testified that the load factor would be constant.

The greatest difficulty we have encountered in considering this appeal is the correct manner of arriving at the ratio of electrical energy used in the installations representing 4,000 watts and that used by the increased connected load of 13,473 watts. In the final analysis we find in the record on this point the testimony only of witnesses produced by appellant. Respondent's theory of the case being entirely different, no attempt was made by her to offer proof on this question.

■ Meters were installed, and for the period involved in this suit 30,154 kilowatt hours of energy were used. In arriving at the amount of free power in kilowatt hours the lessee was entitled to without charge, $\dfrac{4,000}{17,473}$ of 30,154 is the formula deduced from the testimony given by appellant's witnesses; from this the figure of 6,902 kilowatt hours is obtained as the amount of free

power; deducting this from the 30,154 kilowatt hours actually consumed leaves a balance of 23,252 kilowatt hours to be paid for at the rate of seven and one-half cents per kilowatt hour, which establishes an indebtedness due from respondent for excess power of $1,743.90; deducting from this the slot machine balance of $777.65 shown in the findings, and also credit by check of $130, leaves a balance of $836.25 due from respondent to appellant.

The judgment of the lower court is reversed and it is directed to enter a judgment in favor of appellant in accordance with the views herein expressed.

### On Petition for Rehearing

April 21, 1943.

*Per Curiam:*

Upon petition of respondent, and good cause appearing therefor, it is hereby ordered that the petition for rehearing in the above-entitled cause be, and the same is hereby granted; the time for such rehearing is hereby set for Saturday the 15th day of May 1943 at the hour of 10 o'clock a. m. The rehearing will be confined to the question of the jurisdiction of this court to hear and determine the appeal from the judgment entered in said cause, and in the event it is found that this court was without such jurisdiction, then, in such an event, whether the order of this court should have been limited to ordering a new trial.

### On Rehearing

July 12, 1943.                              130 P. (2d) 1022.

*Milton B. Badt,* of Elko, for Appellant.

*Gray & Horton,* of Ely, for Respondent.

**OPINION**

By the Court, ORR, C. J.:

In granting a rehearing in this case we limited it to a consideration of the question of whether or not this court had jurisdiction to determine the appeal from the judgment entered in the trial court, and in the event we determined that we had, then whether the order made in the original opinion should have been limited to ordering a new trial.

In the petition for rehearing respondent for the first time questioned the jurisdiction of this court to entertain the attempted appeal from the judgment entered in the trial court. Respondent was permitted to do this as an exception to the well-established rule

against granting rehearings on points then raised for the first time, because of the raising of a jurisdictional point. The contention of lack of jurisdiction is based upon the ground that the action was one of unlawful detainer under paragraph 5 of section 9135 N. C. L. 1929, and such being the case, the time for taking an appeal from the judgment is governed by section 9148 N. C. L. 1929, the same being section 659 of the civil practice act, which provides, in part: "Either party may, within ten days, appeal from the judgment rendered. * * *"

The appeal in this case was taken seventy-four days after the filing of the decision rendered by the district court, and twenty-one days after the signing and filing of the formal judgment of the district court.

The original complaint establishes the action, at first instituted, to be one of unlawful detainer, and it is governed by chapter 65 of the civil practice act, Comp. Laws, secs. 9132–9152, wherein its provisions are inconsistent with the other provisions of the civil practice act. Roberts v. District Court, 43 Nev. 332, 185 P. 1067.

■ Respondent filed a cross-complaint demanding a money judgment. Such practice is permitted in this state in order that an entire controversy between the parties may be determined in one action. Yori v. Phenix, 38 Nev. 277, 149 P. 180.

The trial court rendered judgment in favor of respondent on his cross-complaint, in the sum of $732.41, and also ordered that appellant take nothing.

■■ Appellant urges that the appeal from the money judgment rendered is not governed by the provisions of the unlawful detainer statutes, but is governed by the provisions of the civil practice act allowing six months to appeal from a judgment. In this contention we think appellant is correct. By failing to perfect his appeal within ten days appellant waived the right to have the judgment, insofar as it denies relief in restitution of the property and related subjects, reviewed. In an appeal from a money judgment we find none of the

reasons requiring haste and summary action, which are so important in unlawful detainer proceedings. The mere fact that such a judgment is given in an action where unlawful detainer is also involved does not change its character or statutory classification, insofar as time given in which to appeal is concerned. The appeal from the money judgment was in time.

■ This case can and should be disposed of without ordering a new trial.

The order of this court, entered in the original opinion, reversing the judgment of the trial court awarding respondent a money judgment will stand, and the trial court is directed to enter a judgment in favor of appellant in the sum of $836.25. This amount is for excess power furnished by appellant to respondent under the terms of the contract referred to and construed in the original opinion of this court.

In all other respects the appeal from the judgment is dismissed.