DONALD VOLPERT AND DONALD MURRAY, APPELLANTS, v. WILLIAM T. PAPAGNA, BETTY JO PAPAGNA, AND ELEANOR ROTT, RESPONDENTS.

No. 5263

November 17, 1967                    433 P.2d 533

[Rehearing denied December 19, 1967]

*Gunderson, Sorenson & Jeffers,* and *David C. Polley,* of Las Vegas, for Appellants.

*Rudiak & Publow,* of Las Vegas, for Respondents.

## OPINION

By the Court, Thompson, C. J.:

This is an appeal by lessees [Volpert and Murray] from a summary judgment for lessors [Papagna and Rott] in an unlawful detainer case. The predicate for suit was the lessees' failure to pay rent. A three-day notice to pay or quit was served upon them before suit was commenced. The lessees answered, pleading affirmative defenses which were later stricken by the court. The lessors were restored to possession by temporary writ, and subsequently moved for summary judgment which was granted. The judgment awarded rent, damages, costs, attorney's fee, and cancelled the lease.

The main issues are the legal sufficiency of the notice to pay rent or quit; the propriety of striking the affirmative defenses; and the validity of the judgment forfeiting the lease without allowing the lessees five days within which to cure their default. Subordinate claims of error also are advanced. Two other lawsuits involving these parties are alleged to bear upon the case at hand. For the reasons hereafter expressed it is our opinion that summary judgment was properly entered.

This case concerns improved property in downtown Las

Vegas known as the Cinnabar Cocktail Lounge. It is owned by Papagna and Rott and is near the Mint Hotel. In 1962 the owners leased a portion of the building to Mazzucca for a restaurant. The maximum monthly rent specified was $400. In January, 1964 the owners sold their bar business to Atol and, in connection with that sale, leased to him the entire premises reserving monthly rent of $1,400. The premises provided parking for the customers of Mazzucca and Atol. The Atol lease acknowledged the prior Mazzucca lease and granted Atol all rents therefrom. It also provided that should the Mazzucca lease terminate, Atol's rent obligation would be reduced pro tanto until another tenant was procured for the restaurant.

In June, 1965 Atol sold his business and assigned his lease to Volpert and Murray. The new lessees took possession in August. They paid rent for two months. They have not paid rent since. In September they sublet the parking lot to the Mint Hotel without the lessors' consent and in violation of the lease. This prompted the lessors to commence an unlawful detainer action which they later voluntarily dismissed before answer, since the Mint had, by then, terminated its sublease. In that case the lessees filed a cost bill for $2,162.34. Mazzucca closed his restaurant about this time, apparently because the parking sublease to the Mint had impaired his business.

Soon after the first unlawful detainer case was voluntarily dismissed by the lessors, the lessees filed suit against the lessors and 33 other defendants, claiming huge damages ($300,000 actual and $15,000,000 punitive) for a conspiracy to obliterate their leasehold interest. That suit remains pending. Issue has not been joined.

Once in February and twice in March, 1966, the lessors caused to be served upon the lessees a notice to pay rent or quit. Since these notices were not honored this action for unlawful detainer was instituted. We turn to discuss the main issues presented.

1. Notice to pay or quit: Notice was given pursuant to NRS 40.250(3) which reads in relevant part: "When he continues in possession * * * after default in the payment of any rent and after a notice in writing, requiring in the alternative the payment of the rent or the surrender of the detained premises, shall have remained uncomplied with for a period of 3 days after service thereof. * * *" Here, the notice demanded payment of rent in the sum of $6,400 due as of March 1, 1966, (i.e., $1,400 due October 1, 1965, and $1,000 due on the first of each month thereafter—the reduction caused by Mazzucca's surrender of his lease in October, 1966), or possession. The notice also reserved the right to claim an

additional $400 per month rent from November 1, 1965 through March 1, 1966 on the premise that Mazzucca's surrender was occasioned by the lessees' breach in subletting the parking lot to the Mint. The lessees contend that this reservation voids the notice since they cannot know the amount of rent to be paid to preclude forfeiture. This contention is not sound.

Unlike California [C.C.P. 1161; Johnson v. Sanches, 132 P.2d 853 (Cal.App. 1942); Dertiman v. Almey, 207 P.2d 615 (Cal.App. 1949); Werner v. Sargeant, 264 P.2d 217 (Cal.App. 1954)], our statute does not require that the amount of rent due be specified in the notice. Indeed, a notice which simply demands the payment of rent or surrender of possession would seem to satisfy our law. Another statute, NRS 40.390,[1] bears on the issue, since its admonition is that substantial compliance with the statutory scheme will suffice. Tested by these standards the present notice is more than adequate.

The Nevada cases of Paul v. Armstrong, 1 Nev. 82 (1865) and Roberts v. District Court, 43 Nev. 332, 185 P. 1067 (1920) do not support the lessees' contention on the notice issue. Paul merely held that a notice in writing must be given before the landlord has a cause of action for holding over after default in the payment of rent. That notice was given here. Roberts was concerned with a different part of the unlawful detainer statute and, in speaking of the notice requirement for that part, stated that the notice must be "specific and peremptory," and not "conditioned or uncertain." In any event, the notice before us is specific and peremptory, and it is not conditioned or uncertain. After specifying $6,400 as the rent due the notice continues: "and the undersigned hereby demand that you pay said sum to the undersigned within three (3) days after the date of service upon you of this Notice, or alternatively, that within the like period of three (3) days, you surrender possession of the above-described premises to the undersigned." We find it quite impossible to conclude that the lessees were not clearly apprised of their alternatives.

2. The affirmative defenses: Five affirmative defenses of the lessees were stricken before the court ruled upon the lessors' motion for summary judgment. By specific statutory provision

---

[1]NRS 40.390 reads: "In all cases of appeal under NRS 40.220 to 40.420, inclusive, the appellate court shall not dismiss or quash the proceedings for want of form, provided the proceedings have been conducted substantially according to the provisions of NRS 40.220 to 40.420, inclusive * * *."

"all matters of excuse, justification or avoidance of the allegations in the complaint may be given in evidence under the answer." NRS 40.390; see also, Yori v. Phenix, 38 Nev. 277, 149 P. 180 (1915); West v. Edwards, 62 Nev. 1, 134 P.2d 932 (1943). Our task, therefore, is to ascertain whether any of the stricken defenses could establish an excuse, justification, or avoidance of the lessees' obligation to pay rent.

a. The lessees assert that the lessors failed to join an indispensable party—the assignor of their lease. Only the tenant in possession, and subtenant if there be one, need be made a party defendant. NRS 40.290. Indeed, the obligation of the assignees of the lease to pay rent is not excused, justified, or avoided by the fact that the assignor may remain obligated for rent as a surety. Cf. Gholson v. Savin, 31 N.E.2d 858, 861–62 (Ohio 1941).

b. The lessees contend that costs of $2,162.34 incurred by them in the previously dismissed unlawful detainer action is a valid setoff against the lessors' claim for rent in this case. The first unlawful detainer suit was voluntarily dismissed by the lessors pursuant to NRCP 41(a)(1). They paid the defendants' filing fees. The defendants had not answered, nor filed a motion for summary judgment. Such a dismissal is not a "judgment" in the defendants' favor entitling them to costs under NRS 18.040. The plaintiffs had the right to dismiss. American Cyanamid Company v. McGhee, 317 F.2d 295, 297 (5 Cir. 1963).

Although not a judgment for costs, the district court is empowered, in a proper case, to order the plaintiff to pay costs in a previously dismissed action as a precondition to the further entertainment of a pending matter. NRCP 41(d).[2] However, this part of Rule 41 does not apply to the case at hand since the first suit was based upon a different claim from this one. The initial litigation was premised upon the lessees' breach of covenant against subletting without the lessors' consent. NRS 40.250(4). The present action is based upon non-payment of rent, NRS 40.250(3), an entirely different claim.

[2]NRCP 41(d) reads: "If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order."

Finally, were we to assume the applicability of Rule 41(d), we would not fault the trial court for exercising its discretion against allowing the claimed "costs" as a setoff, since $1,837.74 of the amount claimed was deposition expense. As the depositions were never used in the first case the expense of securing them is not taxable as costs. Maxwell v. Amaral, 79 Nev. 323, 328, 383 P.2d 365 (1963).

c. The lessees next assert that their pending damage suit for conspiracy against the lessors and 33 other defendants constitutes the defense of abatement. This assertion is not valid. The cause of action must be the same before a pending suit may abate one subsequently commenced. A judgment in favor of the lessees in the conspiracy case would not operate as a bar to this litigation. Cf. Service Parking Corp. v. Trans-Lux Radio City Corp., 47 A.2d 400 (D.C. 1946).

d. The two additional affirmative defenses concern the Mazzucca lease and do not supply a basis for error, since the money judgment entered below gave the lessees full credit for rent due under that lease.

Accordingly, we conclude that none of the affirmative defenses asserted is a defense in excuse, justification, or avoidance of the lessees' obligation to pay rent. The court did not err in striking them.

3. Immediate forfeiture: The summary judgment declared an immediate forfeiture. NRS 40.360(1) states that: "* * * if the proceeding be for unlawful detainer * * * after default in the payment of rent, the judgment shall also declare the forfeiture of such lease or agreement." However, subsection 3 of that statute provides that: "When the proceeding is for an unlawful detainer after default in the payment of the rent, and the lease or agreement under which the rent is payable has not by its terms expired, execution upon the judgment shall not be issued until the expiration of 5 days after the entry of the judgment, within which time the tenant * * * may pay into court for the landlord the amount of the judgment and costs, and thereupon the judgment shall be satisfied and the tenant restored to his estate; but, if payment, as herein provided, be not made within the 5 days, the judgment may be enforced for its full amount and for the possession of the premises. In all other cases the judgment may be enforced immediately." We must, therefore, look to the lease to learn

whether it had expired by "its terms" when judgment was entered.

The lease specifically provides for re-entry and possession by lessors upon breach of condition and for termination at the lessors' election. That election was made when this action was commenced. Cambridge v. Webb, 244 P.2d 505 (Cal.App. 1952). Therefore, it was too late for the lessees to pay the delinquent rent and preclude forfeiture. Upon finding the lessees in default the court "shall declare" forfeiture. NRS 40.360(1). Only when the lease is silent upon the subject of termination for breach of condition does the five-day redemption period of subsection 3 become operative. The judgment for immediate forfeiture was correct.

Additional errors are assigned. Some concern interlocutory orders. Others are directed to items that are controlled by explicit language of the lease. None has merit.

Summary judgment affirmed.

COLLINS, J., ZENOFF, J., BATJER, J., and MOWBRAY, J., concur.