## JOHN JAY CASEY, Individually, and HOLLAND LIVESTOCK RANCH, a Co-partnership Composed of BRIGHT-HOLLAND COMPANY, NEMEROFF-HOLLAND COMPANY, and MAREMONT-HOLLAND COMPANY, Appellants, v. JAMES A. WILLIAMS and ELLEN C. WILLIAMS, Respondents.

No. 6263

March 26, 1971                                    482 P.2d 824

*Vargas, Bartlett & Dixon* and *Frederic R. Starich,* of Reno, for Appellants.

*Paul A. Richards,* of Reno, for Respondents.

# OPINION

By the Court, MOWBRAY, J.:

The plaintiffs-respondents, James A. and Ellen C. Williams, commenced this action in the district court to recover damages from the defendants-appellants for the conversion of approximately 40 horses owned by the Williamses. The district court sitting without a jury found in favor of the Williamses and awarded them a judgment in the sum of $6,634 plus $2,000 attorney's fees and $765.75 for costs incurred.

1. *The Facts.*

The Williamses had leased from appellant Casey the Smoke Creek Ranch for a 5-year period ending September 15, 1968. Just prior to termination of the lease, the Williamses leased the Iveson Ranch and removed most of their stock to the new location. The appellants claim that the Williamses left some livestock on the Smoke Creek Ranch upon which they attempted to assert an agistor's lien and that it was only the horses remaining back at the Smoke Creek Ranch that appellants rounded up for sale to satisfy the lien.

The Williamses' version of what transpired is quite to the contrary. They claim, and there is substantial evidence in the record to support their contention, that their horses the subject of the action had been corralled on the Iveson Ranch and that the appellants "broke out" the horses and drove them some 50 miles back to the Smoke Creek Ranch. The horses were driven by a small, low-flying plane and were guided or "turned" by shotgun blasts from the occupants of the plane. We are told that this is one of the later and more efficient ways of moving livestock because it is faster than the traditional method of moving the herd by mounted horsemen. In this drive the horses were driven approximately 50 miles in 2 days over rugged, precipitous terrain. But not without a price. One of the herd was found dead on the trail with its throat cut by barbed wire. One Appaloosa stud and 15 Appaloosa colts never made it

back to the Smoke Creek Ranch.[1] Several range horses were lost. Those that did make the trip were injured and carried buckshot from the blasts from the plane.

2. *The Sufficiency of the Evidence.*

Appellants argue that the evidence offered by respondents is so incredible as to be unbelievable. One of the respondents' witnesses testified that he saw the low-flying plane from the top of Wagon Tire Ridge and heard the shotgun blasts—a distance of some 10 miles from the moving herd. We are not in a position to determine whether or not such an observation from Wagon Tire Ridge is possible, and we leave such a determination to the sound judgment of the trier of the facts, who observed the witnesses and heard their testimony.[2] Suffice it to say that the record reveals that several horses had buckshot in their rumps; one was later found dead on the trail, caught up in a barbed wire fence; and, finally, one of the Williamses' horses when found was carrying appellant Casey's brand. This is sufficient, we believe, to satisfy the substantial evidence rule. Bangston v. Brown, 86 Nev. 653, 473 P.2d 829 (1970).

3. *The Damages.*

Appellants challenge the $6,634 award on the further ground that the record does not show a breakdown or itemization of the damages awarded for the loss or injury to each individual horse. This is true, and while such an itemization would be helpful to the reviewing court, its absence is not fatal to the award made in this case. The rule against the recovery of uncertain damages is directed against uncertainty as to the existence of damages, rather than as to measure or extent. Fireman's Fund Ins. Co. v. Shawcross, 84 Nev. 446, 442 P.2d 907 (1968). The award of damages in this case is within permissible limits, since it finds support in the evidence that the district judge was free to accept.

4. *The Allowance of Attorney's Fees.*

Appellants attack the $2,000 award for attorney's fees on

---

[1] One of the witnesses testified that this was because Appaloosa horses are "sissies."

[2] In this case, the trial court judge was a native, seasoned son of the West who knows well the rugged topography of the State.

two grounds: (1) NRS 18.010(3)(c)[3] is a denial of the equal protection guaranteed by the Fourteenth Amendment to the United States Constitution, in that it permits the *defendant* as prevailing party to recover attorney's fees *only* when the *plaintiff* has not sought recovery in excess of $10,000; and (2) the district judge was barred from making the allowance in this case because the Williamses did not pray for attorney's fees in their complaint. We reject both contentions. The High Court, in Missouri, Kan. & Tex. Ry. v. Cade, 233 U.S. 642, 650 (1914), ruled:

"If the classification is otherwise reasonable, the mere fact that attorney's fees are allowed to successful plaintiffs only, and not to successful defendants, does not render the statute repugnant to the 'equal protection' clause. This is not a discrimination between different citizens or classes of citizens, since members of any and every class may either sue or be sued. *Actor* and *reus* differ in their respective attitudes towards a litigation; the former has the burden of seeking the proper jurisdiction and bringing the proper parties before it, as well as the burden of proof upon the main issues; and these differences may be made the basis of distinctive treatment respecting the allowance of an attorney's fee as a part of the costs. [Citations.]"

We wish to announce that under the prevailing statute, NRS 18.010, it is not necessary to specifically ask in the complaint for attorney's fees. The statute empowers the district court to make an award of attorney's fees to the plaintiff or counterclaimant who, as a prevailing party, does not recover an amount in excess of $10,000.[4] Such an award, if made, is best left to the sound discretion of the district judge who tries the case.

5. *The Costs.*

(a) The Deposition.

---

[3]NRS 18.010(3)(c):

"3.  The court may make an allowance of attorney's fees to:

". . .

"(c) The defendant as prevailing party when the plaintiff has not sought recovery in excess of $10,000."

[4]NRS 18.010(3)(a), (b):

"3.  The court may make an allowance of attorney's fees to:

"(a) The plaintiff as prevailing party when the plaintiff has not recovered more than $10,000; or

"(b) The counterclaimant as prevailing party when he has not recovered more than $10,000; . . ."

Appellants object to the allowance, as a taxable item, of the cost of taking James A. Williams's deposition, which, although taken by respondents, was never used at the time of trial. The objection is well taken. NRS 18.010 provides in part:

"1. . . . There shall be allowed to the prevailing party in any action, or special proceeding in the nature of an action, in the supreme court and district courts, his costs and necessary disbursements in the action or special proceeding, including:

". . .

"(b) Costs of depositions obtained by the prevailing party *and used by him at the trial.*" (Emphasis added.)

The deposition was not used at trial, and it was improper to assess its cost against the appellants. Volpert v. Papagna, 83 Nev. 429, 433 P.2d 533 (1967).

(b) The Witness Fees.

Appellants claim that it was error to allow the following witness fees:

Bessler mileage, 15 miles at $.15 per mile, 3 days.... $6.75
Iveson, Dean, mileage, 120 miles at $.15 per mile,
  3 days.............................................................. 54.00
Iveson, Dave, mileage, 120 miles at $.15 per mile,
  3 days.............................................................. 54.00

Appellants argue that the mileage paid exceeded that permitted under NRS 48.290.[5] We agree. The statute is clear that mileage shall be allowed and paid at the rate of 15 cents a mile, one way only, for each mile necessarily traveled from the witness's place of residence to the trial court. It was error for the district judge to allow mileage for each day's attendance at trial. The cost bill must be adjusted accordingly to allow mileage for a single one-way trip only, at 15 cents a mile.[6]

6. *The Injunction.*

Finally, appellants object to the following portion of the judgment of the lower court:

---

[5]NRS 48.290, in relevant part:

"Witnesses required to attend in the courts of this state shall receive the following compensation:

". . .

"2. Mileage shall be allowed and paid at the rate of 15 cents a mile, one way only, for each mile necessarily and actually traveled from the place of residence by the shortest and most practical route, . . ."

[6]Thus overruling any views to the contrary expressed in Lamar v. Urban Renewal Agency, 84 Nev. 580, 445 P.2d 869 (1968).

"That defendants, defendants' officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, be and the same are hereby restrained and enjoined from interfering with plaintiffs' use and possession of their horses."

Appellants argue that the order enjoins them from interfering with the Williamses' horses that the court found appellants converted and for which they must now pay damages. Appellants claim that, since the court determined they had converted the horses and must pay damages for their conversion, the Williamses have no further interest in the converted horses. Ex parte Havas, 78 Nev. 237, 371 P.2d 30 (1962). We do not so interpret the order. Rather, it appears that the lower court specifically enjoined appellants from further interfering with the Williamses' remaining herd of horses. Under the factual posture of this case, such an order was understandable and permissible.

Affirmed as modified.

ZENOFF, C. J., BATJER, THOMPSON, and GUNDERSON, JJ., concur.