EDWARD E. JORY, EDWARD E. JORY CORPORATION, a Nevada Corporation, GEORGE E. BURNS, and HARRY J. ADAMS, Appellants, v. JANE BENNIGHT, Respondent.

No. 7835

December 5, 1975                    542 P.2d 1400

*Albright & McGimsey,* Las Vegas, for Appellants.

*James L. Buchanan, II,* Las Vegas, for Respondent.

**OPINION**

By the Court, GUNDERSON, C. J.:

Appealing a judgment for $4,250 damages plus $1,500 attorney fees, awarded for breaching their fiduciary duties to

respondent Jane Bennight, appellants contend *inter alia:* that appellant Edward E. Jory has no responsibility for the conduct of the other appellants, Edward E. Jory Corporation and two of its real estate salesmen, George E. Burns and Harry J. Adams; and that, in any event, evidence relating to damages does not sustain the judgment. We disagree.

Edward E. Jory incorporated his real estate business under the name of Edward E. Jory Corporation in December, 1969. Jory is a corporate shareholder and, as the trial court apparently inferred from evidence before it, the officer licensed on behalf of the corporation pursuant to NRS 645.370.[1] The corporation employed George E. Burns and Harry J. Adams as licensed real estate salesmen.

In June of 1970, respondent Bennight listed her home for sale with the Jory corporation. Burns and Adams showed the home to a Mr. and Mrs. Lewis, who commenced negotiations for its acquisition. Through Burns and Adams, they tendered an offer for $37,000, which Bennight accepted. After this agreement failed because the Lewises could not obtain contemplated financing, another offer set forth a purchase price of $32,750. Evidence the trial court could credit indicates Bennight assented to this lower offer because Burns and Adams deceitfully or negligently promised she would receive an additional $4,500 outside of escrow: $2,500 more cash for her home, plus $2,000 as compensation for furniture also conveyed to the Lewises.

Bennight testified that, after she failed to receive the $4,500,

---

[1]NRS 645.370, as most recently amended in 1975, provides in pertinent part:

"1. Every . . . corporation in its application for a license shall designate and appoint one of its officers, to submit an application for a broker's license.

"2. Upon such . . . officer's successfully passing the examination, and upon compliance with all other requirements of law by the . . . corporation, as well as by the designated . . . officer, the real estate division shall issue a broker's license to such . . . officer on behalf of the corporation . . ., and thereupon the . . . officer so designated is entitled to perform all the acts of a real estate broker contemplated by this chapter; except:

"(a) That the license entitles such . . . officer so designated to act as a real estate broker only as officer or agent of the . . . corporation, and not on his own behalf except as provided in NRS 645.385; and

"(b) That if in any case the person so designated is refused a license by the real estate division, or in case he ceases to be connected with the . . . corporation, the . . . corporation may designate another person who shall make application and qualify as in the first instance."

Although this statute was in slightly different form when the dispute here concerned arose, its apparent purpose was identical.

and while she might still have rescinded the transaction, she sought an explanation from Edward Jory. Except for an early morning phone contact in which Jory promised to investigate the matter, Bennight's evidence indicates he eluded all her efforts to confront him. It further appears that although Jory had personal knowledge of possible misconduct by Burns and Adams, he neither informed Bennight concerning the outcome of his promised investigation, if in fact he ever conducted one, nor did he attempt in any manner to rectify the wrong done to her.

Receiving no satisfaction, Bennight sued not only the Jory corporation and its salesmen, but Edward Jory. The trial court found all such defendants had breached their fiduciary duties, and awarded respondent $4,250. This appeal follows.

1. Public records of the Nevada Real Estate Division show Edward Jory requested that his status be changed from licensed broker to licensed corporate officer on February 6, 1970. The Division, approving this request on February 7, issued a new license in the name of Edward E. Jory, President-Treasurer, Edward E. Jory Corporation. Further, our Secretary of State's records list Edward Jory as the President, Treasurer, and a director of the corporation. Thus, assuming *arguendo* that the trial transcript leaves Jory's status in question, we deem it appropriate to take judicial notice that Edward Jory, as President-Treasurer of Edward E. Jory Corporation, was the officer licensed as broker on behalf of the corporation. See: NRS 47.130; Cannon v. Taylor, 88 Nev. 89, 493 P.2d 1313 (1972); Chas. L. Harney, Inc. v. State, 31 Cal.Rptr. 524 (Cal.App. 1963). Were we to remand for a new trial because Jory's relationship to the corporation was not sufficiently shown, as appellants apparently suggest, that fact would nonetheless be "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." NRS 47.130(2)(b).

2. In essence, appellants contend that a real estate broker like Jory, by electing to conduct his activities on behalf of a corporation, can absolve himself of all fiduciary responsibility normally owed to the public. We deem this position untenable. Use of the corporate structure to evade legal obligations and defeat public policy is not favored. Bangor Punta Operations, Inc. v. Bangor & A. R. Co., 417 U.S. 703 (1974); N.L.R.B. v. Miller Trucking Service, Inc., 445 F.2d 927 (10 Cir. 1971);

E. Albrecht & Son v. Landy, 114 F.2d 202 (8 Cir. 1940); United States v. Hudgins-Dize Co., 83 F.Supp. 593 (E. D. Vir. 1949). Moreover, it seems clear our legislature, in permitting the business of real estate brokerage to operate in corporate form, had no intent to relieve brokers of professional responsibility. Instead, the legislature has provided that a broker's license will be issued, not alone to a corporation as such, but only to a qualified officer on behalf of the corporation. NRS 645.370. We are, therefore, concerned with the obligations and liability of a corporate officer who is licensed to carry out the corporation's duties as a broker.

In urging that Edward Jory owed no duty to Bennight we think appellants misconstrue Jory's status. He remained a real estate broker, although licensed to serve clients on behalf of a corporation. Like any broker, Jory had fiduciary duties to those he had undertaken to serve in a professional capacity, including a duty "to act in the utmost good faith," and "to disclose to his principal facts within or which may come to his knowledge which might influence the principal in the transaction." Keyworth v. Nevada Packard Co., 43 Nev. 428, 436, 186 P. 1110, 1112 (1920). Therefore if Jory, through his own professional misconduct or neglect, breached fiduciary obligations owed to Bennight, he is personally responsible for consequent harm, and operating in the corporate form does not insulate him from such liability. Cf. Adams v. Fidelity & Casualty Co. of New York, 107 So.2d 496 (La.Cir.Ct.App. 1958).

Some jurisdictions, indeed, take the view that the designated broker shares responsibility for any and all breaches of fiduciary duty attributable to the corporation. Circle T. Corporation v. Deerfield, 444 P.2d 404 (Colo. 1968); see Code of Ala., Tit. 46, § 311(5)(Supp. 1973). In the instant case, however, we need not go so far as to declare brokers accountable for breaches they do not participate in, countenance, or direct. Here, we only need recognize that a broker, though licensed on behalf of a corporation, stands personally responsible for his own professional defaults.[2]

---

[2]We also recognize, of course, that under special circumstances, a broker-officer might be liable for corporate breaches upon other legal theories: See: Carson Meadows Inc. v. Pease, 91 Nev. 187, 533 P.2d 458 (1975); North Arlington Med. v. Sanchez Constr., 86 Nev. 515, 471 P.2d 240 (1970); Baer v. Amos J. Walker, Inc., 85 Nev. 219, 452 P.2d 916 (1969); McCleary Cattle Co. v. Sewell, 73 Nev. 279, 317 P.2d 957 (1957).

Thus, it is sufficient for disposition of this case to find evidence in the record that Jory breached his own fiduciary duties to Bennight. As noted, evidence shows that when Jory might have rectified any wrongdoing, he instead evaded Bennight's attempts to invoke his assistance as responsible broker. Even after promising Bennight he would investigate the matter, it appears Jory failed to take meaningful action to protect her. Thus, although Jory may not have been guilty of fraud, evidence of record supports the trial court's determination that he failed in his fiduciary duties as a broker, which include obligations of the utmost good faith, diligence, loyalty, fair dealing, and disclosure of material facts. Holland Rlty. v. Nev. Real Est. Comm'n, 84 Nev. 91, 436 P.2d 422 (1968); Keyworth v. Nevada Packard Co., supra.

3. Appellants also contend that, even if Jory is liable, evidence does not support the amount of damages awarded. The basis for such contention is that the damages include what Bennight anticipated receiving for her furniture, and that this is improper because she still has the furniture. The record, however, discloses facts from which the trial court could infer that the furniture, though retained by respondent, had little or no value to her in her altered circumstances, and that therefore she was in fact damaged in the total amount of $4,250. See: Harden v. Kogo, 91 Nev. 265, 534 P.2d 913 (1975); Casey v. Williams, 87 Nev. 137, 482 P.2d 824 (1971).

. Once respondent is paid, it may be that either appellants or the Lewises will be entitled to the furniture. Whatever the various parties' rights may be regarding the furniture, that issue is not before us.

Affirmed.

BATJER, ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.