KAPS TRANSPORT, INC., Appellant,

v.

Max A. HENRY, Leo F. Rhode, and Sarah O. Wimmer, Appellees.

No. 2926.

Supreme Court of Alaska.

Dec. 2, 1977.

Charles W. Hagans and Timothy M. Stone, Hagans, Smith & Brown, Anchorage, for appellant.

W. Michael Moody, Atkinson, Conway, Young, Bell & Gagnon, Inc., Anchorage, for appellees Max A. Henry and Leo F. Rhode. Calvin R. Jones, Biss & Holmes, Anchorage, for Appellee Sarah O. Wimmer.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR and BURKE, Justices.

## OPINION

CONNOR, Justice.

This is an appeal from a judgment entered in a negligence action.

On February 15, 1974, Sarah Wimmer was following a snowplow along the Sterling Highway in the vicinity of Mile Post 115. A Kaps Transport, Inc., truck and trailer rig driven by R. L. Harrison was travelling along the highway in the opposite direction. Harrison passed the snowplow and because of the snow being thrown from it, entered a momentary whiteout. Immediately after Harrison emerged from the whiteout, he collided with the Wimmer vehicle, went out of control and jackknifed completely, blocking the roadway. Leo Rhode and his passenger Max Henry were driving down the highway towards Homer. As they approached a grade in the road, they saw the Kaps vehicle jackknifed in the road and then struck the disabled truck.

Henry and Rhode filed suit against Wimmer, Kaps Transport and the State of Alaska on a negligence theory for the injuries they sustained. Wimmer filed a cross-claim against Kaps Transport and the State of Alaska seeking indemnity should she be held liable for negligence. She also filed a cross-claim against Kaps for the injuries she sustained and against the State of Alaska for negligent operation of the snowplow. The state also filed cross-claims against Kaps and Wimmer, but was dismissed from this case by stipulation prior to trial.

There was a jury trial and verdicts were returned in favor of Rhode, Henry and Wimmer against Kaps Transport for negligence.[1] Kaps filed a motion for a partial new trial, and Wimmer filed a motion for attorney's fees against Kaps for no less than $1,100 and for costs. A hearing was held on these various motions. The motion for a new trial was denied. Rhode, Henry and Wimmer were awarded costs in connection with depositions of witnesses who testified at the trial. Wimmer was awarded attorney's fees and costs on her cross-claim against Kaps Transport. Appellant raises three principal issues on appeal:[2]

1. Whether the trial court erred in permitting the investigating officer to read from the official accident report he prepared;

2. Whether the trial court erred in excluding defendant Kaps' exhibit QQ, a photograph to be used on cross-examination to challenge the credibility of the accident reconstruction expert, Derwyn Severy; and

3. Whether the trial court abused its discretion in the award of costs and attorney's fees.

I

Pursuant to AS 28.35.080, Alaska State Trooper Roy Sagraves, who was dispatched to the accident scene, prepared an official report of the accident.[3] He was called as a witness at trial. As part of his investigation, he prepared a diagram of the scene of the accident, and was permitted to refer to his accident report in order to recreate the diagram for the jury.[4] He was also permitted to read from his report the statement he took from Mr. Harrison, one of the two witnesses to the accident. Appellant argues that this testimony was improperly admitted.

The argument that the testimony of Trooper Sagraves and the diagram which he drew were improperly admitted is founded on AS 28.35.120 which provides:

"No report made in accordance with this chapter may be used in evidence in a criminal or civil action arising out of the accident that is the subject of the report."

■ *Adkins v. Lester*, 530 P.2d 11, 16–17 (Alaska 1974), provides the basic guidance as to this issue. In *Adkins* we held that AS 28.35.120 does not prohibit the oral testimony of an investigator concerning automobile accident reports, although the report itself is inadmissible under AS 28.35.120. *See Menard v. Acevedo*, 418 P.2d 766 (Alaska 1966). Appellant asserts that *Adkins* is distinguishable from the case at bar. Since Trooper Sagraves was unable to testify from his own recollection, appellant argues that it must have been clear to the jury that he was relating the contents of the report. It is appellant's position that this violates the statutory prohibition.

In *Adkins*, in an opinion by Mr. Justice Erwin, we dealt with the policies underlying the statutory prohibition against receiving accident reports into evidence. We not-

1. Rhode, Henry, and Wimmer recovered, respectively, $20,000, $47,962.84, and $5,000 against Kaps.

2. Appellant raises three additional issues on appeal concerning two of the trial court's evidentiary rulings and its treatment of one of the Kaps' witnesses.

Kaps claims that the court should have stricken the testimony of the witness Severy, but in view of the conflict in the testimony of the witnesses, the objection only goes to the weight, not the admissibility, of the testimony. We also find that there was a proper foundation for Severy's testimony. As to the court's treatment of the witness Pollitt, we find no abuse of discretion and no error. The admission of evidence that Wimmer and her children were secured in their vehicle with seat belts, even if we assume it was error, was harmless. We find none of these issues meritorious and, therefore, will not discuss them.

3. AS 28.35.080 provides in part:

"Every law enforcement officer who, in the regular course of duty, investigates a motor vehicle accident for which a report must be made, either at the time of and at the scene of the accident or thereafter by interviewing the participants or witnesses, shall, within 24 hours after completing the investigation, forward a written report of the accident to the Department of Public Safety."

4. No objection was lodged to the officer's resort to the report to draw the diagram in court.

ed that there is persuasive argument that such reports themselves would, in the discretion of the trial court be admissible, absent the statutory bar. Moreover, when the witness who prepared the report testifies at trial as to his own observations, the possible hearsay character of the accident report is not a valid basis of objection. Similarly, the danger that the jury may be unduly influenced by the official character of the document is obviated when only the oral testimony of the investigator is received.

■ In view of the strong reasons for giving narrow scope to the statutory prohibition, we find appellant's argument in the instant case unpersuasive. Although the witness had little independent recollection of the accident, he could rely upon his report as a proper basis for his testimony.[5] It was still his testimony and not the report itself which was placed in evidence. In our view the report, not having been admitted, was not used in evidence in the sense prohibited by statute. We conclude that there was no error.

## II

Defendant Wimmer offered Derwyn Severy, an expert in accident reconstruction and photographic interpretation, to testify about the cause of the accident, particularly the location of the Kaps Transport truck in relation to the center of the highway. Mr. Severy had analyzed photographs taken by Trooper Pollitt at the scene of the accident, and was of the opinion that the Kaps truck was 18 inches over the center line. This was based in part on his use of a process called perspective analysis.

In order to test Mr. Severy's ability to calculate distances based solely on photographic analysis, on cross-examination counsel for Kaps showed Mr. Severy exhibit QQ, a photograph of two Ford Mustangs, and asked him what information he needed to calculate the distance between the two cars. Severy studied the picture, and stated he thought it was a trick photograph. He made his calculations, but expressed doubt as to their accuracy because he did not know how the photograph was taken. The court permitted counsel for Kaps to cross-examine Severy on the procedure he used in making his calculations. Mr. Severy finally concluded that he was unable to apply perspective analysis to the photograph because he did not know the conditions under which it was taken. For this reason, the trial court excluded the photograph and precluded Kaps from arguing to the jury concerning Severy's answers about it.

■ A photograph is admissible in evidence as demonstrative evidence if a proper foundation has been laid showing that it is an accurate and correct depiction of its subject, and that it will be helpful to the jury.[6]

■ That there are inaccuracies or defects in the photograph does not necessarily render it inadmissible as long as there is an explanation of these imperfections so that

5. Where a witness testifies on the basis of past recollection recorded, he may refer to his past recorded recollection, but it is not necessary in every case that the past record itself be placed in evidence. See The J. S. Warden, 219 F. 517, 520–521 (3d Cir. 1914); Cohen v. United States, 36 F.2d 461, 462 (3d Cir. 1929). For a more extensive discussion of the distinction between present recollection revived and past recollection recorded, see the scholarly opinion of Judge Kalodner in United States v. Riccardi, 174 F.2d 883 (3d Cir. 1949), cert. denied, 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949). At times the two categories, while clearest in their extremes, converge in practical application. In the case at bar it appears to us that it was quite proper for the trial court to permit the witness to rely on the accident report as the basis of his testimony. From the standpoint of general evidentiary principles, further discussion is unnecessary.

6. Pickett v. Kyger, 151 Mont. 87, 439 P.2d 57 (1968); State v. Radcliff, 188 Neb. 236, 196 N.W.2d 119 (1972); McCormick, Handbook of the Law of Evidence § 214 (Cleary, 2d ed. 1972); see State v. Abbott, 498 P.2d 712, 728 (Alaska 1972); Maze v. State, 425 P.2d 235 (Alaska 1967). See generally Annot. 9 A.L. R.2d 899 (1950); J. Mouser and J. Philbin, Photographic Evidence—Is There a Recognized Basis for Admissibility?, 8 Hastings L.J. 310 (1957); 2 Scott, Photographic Evidence § 1027 (2d ed. 1969).

the jury is not misled. *Riksem v. Hollister*, 96 Idaho 15, 523 P.2d 1361 (1974); *see Southeastern Engineering & Mfg. Co. v. Lyda*, 100 Ga.App. 208, 110 S.E.2d 550 (1959).

In the case at bar, appellant Kaps sought to introduce its exhibit QQ to challenge Mr. Severy's calculations without laying a proper foundation. As Mr. Severy pointed out himself, there was no explanation of how the photograph was taken, whether there was lens distortion and, if so, of what nature.[7] Therefore, Mr. Severy's inability to use the perspective analysis on appellant's photograph does not contradict the reliability of his calculations which were based on Trooper Pollitt's photographs. We conclude that the trial court did not abuse its discretion by refusing to admit the proffered photograph, and by precluding argument based upon Severy's answers concerning it. There was no error.

### III

Kaps next argues that the trial court abused its discretion in its award of attorney's fees and costs to Wimmer. Through negotiations Wimmer obtained from Rhode and Henry attorney's fees in the amount of $1,000 from each, or a total of $2,000. Additionally, Wimmer filed a motion for attorney's fees from Kaps in the amount of $1,000. The trial court awarded attorney's fees in the amount based on the fee schedule set forth in Civil Rule 82(a).[8] The $5,000 damage award to Wimmer on her claim against Kaps was used in computing the $1,100.

Kaps does not dispute that Wimmer was the "prevailing party" for the purposes of Civil Rule 82(a). *See Fairbanks Bldrs., Inc. v. Sandstrom Plumb. & Heat.*, 555 P.2d 964, 967 (Alaska 1976); *Continental Ins. Company v. U. S. Fid. & Guar. Co.*, 552 P.2d 1122, 1125 (Alaska 1976); *DeWitt v. Liberty Leasing Company of Alaska*, 499 P.2d 599, 601 (Alaska 1972). Rather, Kaps argues that the greater portion of Wimmer's legal expenses was incurred in connection with her defense on the claims brought by the plaintiffs, Rhode and Henry. Kaps argues that since Wimmer settled for $2,000 in attorney's fees with plaintiffs, whose claims were ultimately worth $67,962.84, Wimmer should recover only an amount bearing the same relationship to her recovery of $5,000 on her cross-claim that $2,000 bears to $67,962.84, or approximately $147.00.

This logic, if we understand its intended thrust,[9] is fallacious in that it appears to compare two dissimilar objects. In order to establish her separate claim against Kaps, as well as to defend against Rhode and Henry, Wimmer had to establish that Kaps was the negligent party. It was quite proper to allow an attorney's fee to

**7.** At oral argument before us counsel for appellant admitted that a toy automobile appeared in the photograph.

**8.** Kaps argues that the trial court was not justified in applying the percentages set out in Civil Rule 82(a)(1) to determine attorney's fees because Wimmer did not state with certainty what her actual fees were. While it is true that she did not submit an affidavit itemizing her expenditures, she did submit a memorandum in support of her motion and, at the hearing, her attorney discussed the fee arrangement on the record, showing that an award of $1,100 would provide her only with partial compensation for legal fees. *See Malvo v. J. C. Penney Co., Inc.*, 512 P.2d 575, 587 (Alaska 1973). *See generally* Note, Award of Attorney's Fees in Alaska: An Analysis of Rule 82, 4 *UCLA–Alaska L. Rev.* 129 (1974). At the hearing, the trial judge asked Kaps' counsel whether he had any doubts about the truth or factual elements of

the representations made by Wimmer's attorney. Kaps' attorney replied that he had no such doubts. Under the circumstances, Kaps' claim that the trial court erred in adopting Rule 82(a) as a reasonable measure for the award of attorney's fees lacks merit. We find no error.

**9.** Appellant's argument read as follows:

" . . . the greatest portion of the costs and attorney's fees expended on behalf of defendant Wimmer were [sic] incurred in defense of the substantial personal injury claims of the plaintiffs which resulted in verdicts totalling $67,962.84. Based on that successful defense, defendant Wimmer stipulated to accept $1,000.00 as an award of attorney's fees. Kaps contend that a reasonable resolution of the award of attorney's fees against Kaps would be to determine that amount which bears the same relationship to $5,000.00 which $2,000.00 bears to $67,962.84, or approximately $147.00."

Wimmer for defending against Rhode's and Henry's claims, and a separate fee for prevailing on her separate claim against Kaps. But it would not be correct to assign to Wimmer a percentage of legal fees in proportion to the amount of a verdict rendered in favor of other parties against another defendant. Therefore, we conclude that under these circumstances the trial court did not abuse its discretion, nor was its award "manifestly unreasonable." *Fairbanks Bldrs., supra,* at 967; *First National Bank of Fairbanks v. Enzler,* 537 P.2d 517, 525–26 (Alaska 1975); *Palfy v. Rice,* 473 P.2d 606, 613 (Alaska 1970); *see Froelicher v. Hadley,* 442 P.2d 51 (Alaska 1968).

In addition to challenging the trial court's award of attorney's fees, Kaps also challenges the award of $2,218.35 for the fee of Wimmer's expert witness, Mr. Severy. It takes the position that the greatest amount of time was spent defending against the main claim and, therefore, that the award of costs for expert witness fees should reflect this fact. Kaps points out that Wimmer waived costs against Henry and Rhode, and argues that under these circumstances, it was manifestly unreasonable for the trial court to award the entire amount of costs against Kaps. Instead Kaps urges that costs be charged against the responsible parties on a pro rata basis.

■ We will affirm the trial court's award of costs under Civil Rule 79 unless there has been a clear abuse of discretion. *Adoption of V. M. C.,* 528 P.2d 788 (Alaska 1974); *DeWitt v. Liberty Leasing Company of Alaska,* 499 P.2d 599 (Alaska 1972); *Beaulieu v. Elliott,* 434 P.2d 665 (Alaska 1967). We have not previously considered a situation such as this where one defendant successfully defends against liability, and at the same time is successful on a separate cross-claim against the other defendant for its negligence. In this situation, there is one accident and one trial, but there are actually two separate causes of action.

Cases on this issue from other jurisdictions are sparse and do not provide us with much insight, since they do not involve separate cross-claims filed by one defendant against another. In *Davis v. Schaefer,* 197 Cal.App.2d 855, 17 Cal.Rptr. 925 (1961), the plaintiffs filed an action against Mr. and Mrs. Schaefer for injuries sustained when the Schaefer's son, who was driving the family car, collided with the plaintiffs. A separate action was filed against Wilde and La Fontaine, car repairmen, for negligently repairing the brakes in the Schaefer car, causing the collision when the brakes failed. The plaintiffs recovered solely against Wilde and La Fontaine. The issue on appeal was whether Wilde and La Fontaine were required to bear the costs of the Schaefer's successful defense as well as the costs of the plaintiff's litigation. The California Court of Appeals answered this in the negative, citing an earlier California case.[10] Since Wilde and La Fontaine and the Schaefers were not "adverse parties," but merely co-defendants, neither was entitled to costs against the other.

> "The right to costs is statutory and the statute does not give a party any right to recover those amounts which she has become liable for because she has unsuccessfully prosecuted an action against a third person as well as against a defendant as to whom she is successful. To hold otherwise would be to indirectly make the defendant liable for the costs incurred by another defendant." 17 Cal.Rptr. at 927, quoting *Gibson, supra* n. 9, 343 P.2d at 611.

*See also Skyline Cab Co. v. Bradley,* 325 S.W.2d 176 (Tex.Civ.App.1959); *Liberty Oil & Sulphur Co. v. City Nat. Bank of Beaumont,* 45 S.W.2d 782 (Tex.Civ.App.1932).

■ The case at bar is distinguishable from the *Davis* case, since Henry and Rhode do not seek to recover the amounts expended in connection with the action against Wimmer as well as those incurred in connection with the Kaps lawsuit. However, *Davis v. Schaefer, supra,* does lend some support to the trial court's award in this case, since Wimmer and Kaps Transport were truly adverse parties by virtue of

10.  *Gibson v. Thrifty Drug Co.,* 173 Cal.App.2d 554, 343 P.2d 610 (1959).

Wimmer's cross-claim. The trial court expressed the view that the costs for the cross-claim were interwoven with those for the defense. Moreover, despite Kaps' contention that Wimmer's primary effort was directed to exculpating herself, in fact most of her effort was directed at establishing the location of the Kaps vehicle with respect to the center of the highway in order to establish the negligence of Kaps. This case is unusual in that Wimmer could properly defend in the main suit by aggressively prosecuting the cross-claim against Kaps. Under these circumstances, we conclude that the trial court properly exercised its discretion in awarding costs for the fees of the expert witness, Mr. Severy, in favor of Mrs. Wimmer against Kaps.

Finally, Kaps disputes the award of costs to the plaintiffs and Wimmer for the depositions of Max Henry, Ron Engleman (a witness), Wimmer and Leo Rhode. These depositions were not published at trial, and on appeal Kaps argues that costs should be recoverable only where the deposition is actually published and used in evidence at trial.

Civil Rule 79(b) provides that among the items which may be allowed as costs are "the necessary expense of taking depositions for use at trial . . . ." The trial court was of the opinion that costs for depositions are recoverable if the individual deposed testifies at trial even though his deposition is not actually used.

We have not previously considered whether costs for unpublished depositions may be awarded under Rule 79(b). The language of the rule itself suggests that the depositions must be taken in preparation for trial, as opposed to use only for discovery purposes, but need not actually be introduced into evidence. A comparison of

Civil Rule 79(b) with similar provisions from other jurisdictions lends support to this view. The Louisiana statute providing for costs permits cost awards for depositions "used on the trial," La.Rev.Stat.Ann. 13.4533, and the Louisiana courts disallow costs for depositions not introduced into evidence. *Succession of Franz*, 242 La. 875, 139 So.2d 216 (1962); *Smith v. Jung Hotel Corp.*, 224 So.2d 111, 114 (La.App.1969); *Kommer v. Assenheimer*, 174 So.2d 197 (La. App.1965). Similarly, the Nevada statute, Nev.Rev.Stat. 18.010, permits awards for "[c]osts of depositions obtained by the prevailing party and used by him at the trial." Therefore, the Nevada courts disallow costs for depositions not used at trial. *Casey v. Williams*, 87 Nev. 137, 482 P.2d 824, 827 (1971); *Volpert v. Papagna*, 83 Nev. 429, 433 P.2d 533 (1967).

On the other hand, in jurisdictions where the pertinent statute does not contain a requirement that the deposition be used at trial or does not even specifically cover costs for depositions, courts will allow costs for depositions which were taken in good faith and are reasonably necessary.[11] The federal courts apply a similar test of reasonable necessity under Federal Rule of Civil Procedure 54(d), *e. g., Wahl v. Carrier Manufacturing Co., Inc.*, 511 F.2d 209 (7th Cir. 1975), and have allowed costs for depositions read into evidence, used for cross-examination, used in connection with a motion for summary judgment, or used to preserve the testimony of a witness who might not be available at trial. 6 Moore's Federal Practice ¶ 54.77[4] (2d. ed. 1976), and cases collected therein. Additionally, costs for depositions taken in preparation for trial, though not actually used, have been awarded where they are reasonably necessary. *E.*

11. *Stocker v. Wells*, 155 Neb. 472, 52 N.W.2d 284, 287 (1952); *Thornton v. Mid America Finance & Loan Company*, 8 Ohio App.2d 229, 196 N.E.2d 332 (1964); *see Moss v. Underwriters' Report*, 12 Cal.2d 266, 83 P.2d 503, 508 (1938); *City of Burbank v. Nordahl*, 199 Cal. App.2d 311, 18 Cal.Rptr. 710, 723 (1962); *Ceranski v. Muensch*, 60 Cal.App.2d 751, 141 P.2d 750 (1943); *see also Cohn v. Florida National Bank at Orlando*, 223 So.2d 767 (Fla.App.1969);

*Fatolitis v. Fatolitis*, 271 So.2d 227 (Fla.App. 1973); *Lockwood v. Test*, 160 So.2d 142, 143 (Fla.App.1964) (test is whether deposition serves a useful purpose); *Baumbach v. Poole*, 266 Or. 154, 511 P.2d 1219, 1222 (1973) (expense of depositions for discovery not taxable); *Kendall v. Curl*, 222 Or. 329, 353 P.2d 227, 232 (1960) (expenses for depositions necessary to preserve testimony are recoverable).

*g., Harrisburg Coalition Against Ruining the Environment v. Volpe,* 65 F.R.D. 608, 610–11 (M.D.Pa.1974). The rationale behind this limitation of good faith and reasonable necessity is that while at the time of trial it may be unnecessary or impossible to make use of a deposition, at the pretrial stage it may appear to counsel that he cannot proceed safely to trial without deposing parties or key witnesses. Therefore, he should not be penalized for taking a precautionary measure to protect the interests of his client. On the other hand, since parties are required to pay for their own discovery expenses, the "reasonable necessity" limitation will act as some deterrent to the taking of unnecessary depositions. We interpret our own Civil Rule 79(b) as embodying these requirements of "good faith" and "reasonable necessity."

Turning to the case at bar, the parties whose depositions were taken were key witnesses who actually testified at trial. Counsel for Wimmer may well have believed that the depositions would be utilized for cross-examination or for impeachment purposes, and there is no showing that they were taken in bad faith.

■ It was within the sound discretion of the trial court to determine whether the costs were allowable. *Beaulieu v. Elliott, supra; accord Moss v. Underwriters' Report, supra.* In the circumstances we conclude that the trial court properly exercised its discretion in allowing costs for these depositions.

AFFIRMED.