MIKOHN GAMING, Appellant/Cross-Respondent, *v.* CIPRIANO ESPINOSA, Respondent, and DISTINCTIVE INTERIOR D'SIGNS, Respondent/Cross-Appellant.

No. 44014

July 13, 2006                                     137 P.3d 1150

*J. Michael McGroarty*, Las Vegas, for Appellant/Cross-Respondent.

*Nancyann Leeder*, Nevada Attorney for Injured Workers, and *Donna M. Sweger*, Supervising Attorney, Carson City, for Respondent Espinosa.

*Piscevich & Fenner* and *Kimberley Fenner*, Reno, for Respondent/Cross-Appellant Distinctive Interior D'Signs.

Before DOUGLAS, BECKER and PARRAGUIRRE, JJ.

## OPINION

*Per Curiam:*

In this opinion, we examine whether depositing a copy of an administrative decision in the State Mail Service constitutes service of that decision for purposes of determining the time within which a petition for judicial review must be filed. We also examine the application of the last injurious exposure rule in a workers' compensation claim. Cipriano Espinosa initially injured his left knee in July 1995, while working as a welder for Mikohn Gaming (Mikohn). In February 2001, Espinosa was working for Distinctive Interior D'Signs (Distinctive) when he injured his right knee. When Espinosa sought treatment for his right knee, he also sought treatment for continuing and worsening pain in his left knee. Doctors differed regarding whether Espinosa's right knee injury aggravated his left knee injury.

Espinosa's 2001 workers' compensation claims, regarding the continuing and worsening pain in his left knee, against Mikohn and Distinctive were denied by their respective insurers. Espinosa appealed these decisions to a Department of Administration hearing officer, who reversed Distinctive's insurer's decision to deny coverage for Espinosa's left knee. Distinctive and Espinosa appealed the hearing officer's decisions, and the appeals officer determined that the last injurious exposure rule applied in this successive in-

jury case, making Mikohn liable for the mere recurrence of Espinosa's left knee injury.

Mikohn filed its petition for judicial review thirty-four days after the Department of Administration deposited its decision for mailing with the State Mail Service. The district court found no procedural defect and denied Mikohn's petition because substantial evidence supported the appeals officer's decision that Espinosa's injury to his left knee in 2001 was a mere recurrence of his earlier injury. We agree and affirm the district court's order.

## FACTS

Espinosa injured his left knee in July 1995 while he was working as a welder for Mikohn. Espinosa initially underwent two surgeries on his left knee, one in August 1995 and the other in April 1996. Espinosa was compensated for the injury through Mikohn's workers' compensation insurance. Espinosa continued to have pain and other problems with his left knee through 1996 and early 1997. In an April 1997 letter, Dr. Michael Edmunds opined that Espinosa suffered from degenerative joint disease (DJD). In March 1999, Espinosa reported to Dr. Edmunds that his knee was still irritable and the pain had not improved. Dr. Edmunds noted that Espinosa's symptoms were consistent with medial compartment DJD. In May 1999, Dr. Thomas Fyda also opined that Espinosa had medial compartment DJD, which was a direct result of the industrial injury and subsequent surgery to his knee. Espinosa underwent another surgery to his left knee in July 1999, followed by physical therapy. Nevertheless, Espinosa continued to report discomfort and pain in his knee throughout 2000. During that time, Dr. Edmunds noted some moderate medial compartment DJD.

In February 2001, Espinosa was working for Distinctive when he injured his right knee. Espinosa was initially diagnosed with a right knee sprain. A month later, he underwent magnetic resonance imaging, which revealed a medial collateral ligament tear in his right knee. Distinctive's insurer accepted Espinosa's workers' compensation claim regarding his right knee as an industrial injury and provided workers' compensation benefits. When Espinosa sought treatment for his right knee, he also sought treatment for continuing and worsening pain in his left knee. Dr. Edmunds recommended further surgery to Espinosa's left knee in the fall of 2001.

Doctors differ as to how Espinosa's right knee injury affected his left knee. Dr. James Craner diagnosed Espinosa in April 2001, with a degenerative disease in his left knee that was ''aggravated'' by his right knee injury because it forced Espinosa to favor his right knee. In contrast, Dr. Edmunds' letter of June 18, 2001, opined that Espinosa's ''left knee symptoms are independent of his

right knee symptoms[,] . . . were present prior to the right knee injury date, . . . [and] would be unchanged regardless of the right knee injury." In an August 10, 2001, letter, Dr. Edmunds opined that Espinosa's left knee symptoms were exacerbated by the right knee injury but that the left knee had returned to normal and any further changes to the left knee would be a progression of the existing injury to the left knee. Dr. Edmunds reiterated his opinion that Espinosa's left knee symptoms were independent of the right knee injury in a May 2003 letter.

Espinosa submitted a workers' compensation claim to Mikohn, asking to reopen his case regarding his left knee injury, which was denied. Espinosa also made a claim against Distinctive for his left knee, which was denied as well. Espinosa later submitted a claim to Distinctive for surgery on his left knee, which was also denied. Espinosa appealed all three decisions, and the hearing officer affirmed the decision not to reopen the Mikohn case. The same hearing officer reversed the decision of Distinctive's insurer to deny coverage, determining that Espinosa's left knee injury was a "preexisting industrial injury" and that the injury to the right knee aggravated the injury to the left knee. Later, the hearing officer affirmed the decision of Distinctive's insurer to deny coverage for surgery to Espinosa's left knee. All three decisions were appealed.

The appeals officer heard all three appeals in July 2003 and determined that the last injurious exposure rule covered the "successive injury case." The appeals officer, in applying the standard for successive injuries with successive employers, found that because the 2001 injury to the left knee was a mere recurrence and not an aggravation as a result of Espinosa's right knee injury, Mikohn was to bear the workers' compensation liability for Espinosa's left knee injury. The appeals officer therefore reversed the hearing officer's decision.

The certificate of mailing from the Department of Administration states that the appeals officer's decision was "deposited for mailing" to Mikohn's attorneys on August 13, 2003. Affidavits provided to the district court indicate that the decision was placed in the State Mail Service on August 13, 2003, and the practice of the State Mail Service was to pick up the mail and send it on the same day or the following day. Mikohn's attorneys received the decision on Monday, August 18, 2003. Mikohn filed its petition for judicial review on September 16, 2003, thirty-four days after the decision was placed in the State Mail Service.

In the district court, Mikohn sought to overturn the appeals officer's decision, and Distinctive sought to dismiss the petition as untimely because it was filed thirty-four days after the date on the Department of Administration's certificate of mailing. The district

court determined that it had jurisdiction to hear the case. Because the district court could not determine when the appeals officer's decision was deposited with the United States Postal Service, it used the date when Mikohn's attorneys received the decision to calculate the time period in which a petition for judicial review could be filed. Mikohn's petition was filed twenty-nine days after this date, which rendered the petition timely. The district court affirmed the appeals officer's decision. Mikohn and Distinctive appealed.

## DISCUSSION

We must first address Distinctive's argument that Mikohn failed to timely file its petition for judicial review. Under NRS 233B.130(2)(c), a party has thirty days after service of the agency's final decision to petition the district court for judicial review. If the agency's decision is served by mail pursuant to NRCP 5(b)(2)(B),[1] NRCP 6(e) adds three days to the time period for filing a petition for judicial review.[2] As the time limitation of NRS 233B.130(2)(c) is jurisdictional, a district court is divested of jurisdiction if the petition is not timely filed.[3]

In this case, the appeals officer's decision was mailed. Thus, Mikohn had thirty-three days from the date of mailing to file a petition. However, the district court found that it could not "be determined with any accuracy when the decision was deposited in the mail" and that the petition was timely. We agree.

The certificate of mailing states that the decision was "deposited for mailing" to Mikohn's attorneys on August 13, 2003. However, the words "deposited for mailing" do not provide any assurance that the decision was actually mailed that day or indicate with whom the decision was deposited. Therefore, we conclude that the certificate of mailing is insufficient to establish the mailing date.

Moreover, affidavits provided to the district court indicate that the decision was deposited with the State Mail Service on Au-

---

[1]At the time of Mikohn's petition for judicial review, the service-by-mail provision was located in NRCP 5(b). The rule was reorganized effective January 1, 2005, but the substance of the provision was not changed. To be consistent with the reorganization, we refer in this opinion to the current location of the service-by-mail provision, NRCP 5(b)(2)(B).

[2]*See Hardin v. Jones,* 102 Nev. 469, 471, 727 P.2d 551, 552 (1986).

[3]*Bing Constr. v. State, Dep't of Taxation,* 107 Nev. 630, 631, 817 P.2d 710, 710-11 (1991).

gust 13, 2003. The practice of the State Mail Service was to pick up the mail and send it on the same or the following day. Even if true, depositing the decisions with the State Mail Service does not satisfy service by mail under NRCP 5(b)(2)(B).

The State Mail Service is the internal mail service for Nevada's state agencies.[4] It does not provide mail delivery services to the public. Thus, until deposited with an external mail delivery service, the document remains in the State's possession. If depositing a document with an internal mail service qualified as mailing, then depositing a document with any corporate or law firm mail department would constitute ''mailing.'' One phone call to the mail department by an unscrupulous executive asking the mail department to delay sending a document could then play havoc with the jurisdiction of the courts. Therefore, we conclude that a document is not mailed under NRCP 5(b)(2)(B) until it is placed in the care of a business providing general delivery services to the public or deposited with the United States Postal Service.

In the present case, the parties have not provided any records from the State Mail Service indicating when it deposited the appeals officer's decision with the United States Postal Service.[5] Thus, we agree with the district court that the parties have provided no evidence of when the decision was actually deposited with the United States Postal Service.

Mikohn's attorneys received the decision on Monday, August 18, 2003, and Mikohn argues that it had thirty-three days from that date to file the petition. We disagree. It is common sense that mail does not instantly appear the same day it is mailed. Mikohn's thirty-three day time period began on the last day when the State Mail Service might possibly have deposited the appeals officer's decision with the United States Postal Service. Mikohn's attorneys received the decision on a Monday. The State Mail Service is closed on Saturday and Sunday,[6] so the latest the decision could have been deposited with the United States Postal Service was Friday, August 15, 2003. Therefore, we conclude that Mikohn had thirty-three days from August 15, 2003, or until September 17, 2003, to file its petition. As Mikohn filed its petition for judicial

---

[4]Dep't of Admin., *Nevada State Administrative Manual* § 1210.0, at 79 (24th ed. 2006) [hereinafter *State Administrative Manual*]. We take judicial notice of the practices of the State Mail Service. *See Jory v. Bennight*, 91 Nev. 763, 766, 542 P.2d 1400, 1403 (1975); NRS 47.130.

[5]An envelope with a postmark and an appropriate return address may also provide evidence of when a decision was deposited with the United States Postal Service. However, in this case, Mikohn's attorneys did not retain the postmarked envelope.

[6]*State Administrative Manual*, *supra* note 4, § 1206.0, at 78.

review on September 16, 2003, we conclude that it was timely. Accordingly, the district court correctly determined that it had jurisdiction to hear Mikohn's petition.

Having established that Mikohn's petition was timely, we now turn to the appeals officer's application of the last injurious exposure rule. We review administrative decisions for an abuse of discretion.[7] "[W]e independently review purely legal determinations, [but] the appeals officer's fact-based conclusions of law are entitled to deference and will not be disturbed if they are supported by substantial evidence."[8] How to characterize a particular case under the last injurious exposure rule is such a fact-based legal determination.[9]

In successive injury cases, the appeals officer must first make a determination as to whether the injury is a new injury, an aggravation of an old injury, or a mere recurrence of the old injury.[10] " '[I]f the subsequent injury is merely a recurrence of the first, and does not contribute even slightly to the causation of the disabling condition, the [carrier] covering the risk at the time of the original injury remains liable for the subsequent injury.' "[11] Otherwise, if the injury is a new injury or causes an aggravation of the old injury, the workers' compensation provider at the time of the new injury is liable.[12]

In this case, the appeals officer determined that Espinosa's left knee pain was a mere recurrence of his earlier injury. Mikohn argues that Espinosa's right knee injury aggravated his left knee injury, but we conclude that substantial evidence supports the appeals officer's determination. Thus, Mikohn bears the liability as the last employer with a causal relation to the injury.

Accordingly, we affirm the district court's order denying judicial review.

---

[7]*Grover C. Dils Med. Ctr. v. Menditto*, 121 Nev. 278, 283, 112 P.3d 1093, 1097 (2005).

[8]*Id.*

[9]*Id.* at 284, 112 P.3d at 1098.

[10]*Id.* at 284, 112 P.3d at 1097-98.

[11]*Id.* at 284, 112 P.3d at 1098 (alteration in original) (quoting *Las Vegas Hous. Auth. v. Root*, 116 Nev. 864, 869, 8 P.3d 143, 146 (2000)).

[12]*Id.*